[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 829 
Hank Smith, Jr., sued Procom Services, Inc. ("Procom"), a Texas corporation, and Russell Leitch and Hal Crews, both residents of Dallas, Texas, in the Jefferson Circuit Court alleging breach of contract. Procom, Leitch, and Crews filed a motion to dismiss alleging, among other grounds, that venue in Jefferson County was improper and asking the trial court to enforce the outbound forum-selection clause contained in Smith's employment contract with Procom. The motion to dismiss was supported by Leitch's and Crews's affidavits. Smith amended his complaint to add a fraud claim based upon allegedly false representations made to him by Leitch and Crews. Smith also filed a response to the defendants' motion to dismiss, along with his supporting affidavit. The trial court overruled the motion to dismiss without a written explanation. Procom, Leitch, and Crews petition this Court for a writ of mandamus "directing the trial court to dismiss the claims of Smith against petitioners" based on the outbound forum-selection clause.
 I. Standard of Review "An outbound forum-selection clause — a clause by which parties specifically agree to trial outside the State of Alabama in the event of a dispute — implicates the venue of a court rather than its jurisdiction. See Ex parte CTB, Inc., 782 So.2d 188
(Ala. 2000); and O'Brien Eng'g Co. v. Continental Machs., Inc., 738 So.2d 844, 845 n. 1 (Ala. 1999).
 "`"The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus." Ex parte National Security Ins. Co., 727 So.2d 788, 789 (Ala. 1998). "Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995).'
 "Ex parte CTB, Inc., 782 So.2d at 190. `On appeal, the review of a trial court's ruling on the question of enforcing a forum-selection clause is for an abuse of discretion.' Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala. 2001)."
Ex parte Rymer, 860 So.2d 339, 341 (Ala. 2003).
 II. Facts
In April 2002, Smith entered into an one-year employment contract with Procom, a corporation that markets telecommunications services and equipment. The employment contract provided, in relevant part:
 "This Employment Agreement (`Agreement') is made between Procom *Page 830 
Services, Inc., a Texas corporation (`Employer'), and HANK SMITH, JR. (`Representative') and is entered into as of April 15, 2002.
". . . .
 "Annual Compensation. Representative's annual compensation shall be as follows: minimum of $1000 per week or agreed overrides whichever is greater.
". . . .
 "Governing Law. This agreement shall be governed by and construed in accordance with the law of the State of Texas. The parties hereby irrevocably agree that the state courts sitting in Dallas, Texas shall have sole and exclusive jurisdiction for any action or proceeding relating to or arising out of this agreement and waive any objection to venue in such court. In any such action or proceeding, the prevailing party shall be reimbursed by the other party for all costs and expenses (including, without limitation, attorney's fees and costs) incurred in connection with such action or proceeding. The term `prevailing party' shall mean that party whose position is substantially upheld in a final judgment rendered in such litigation, or, if the final judgment is appealed, that party whose position is substantially upheld by the decision of the final appellate body to consider the appeal."
Smith attested in his affidavit that "[w]hen [he] negotiated [his] employment with Procom, [he] dealt with Hal Crews and Russell Leitch. The negotiations took place while [he] was in Alabama and Georgia, and while Hal Crews and Russell Leitch were in Georgia and Alabama[,] respectively."
Smith asserted in his amended complaint that Leitch and Crews "each represented to him that he would be paid at least one-thousand ($1,000.00) a week or agreed upon overrides, whichever was greater for a period of one year," but that in November 2002 he began to receive less than $1,000 a week. Smith averred that "[t]he representations were false and made with intent that [he] rely on the representations, or were recklessly made or made negligently and [Smith] did rely on them." At the time Smith entered into the employment contract with Procom, Leitch was the president of Procom; Crews stated in his affidavit that he was not "employed by [Procom]," and that his affiliation with Procom was as "an officer of a corporation which provides consulting services to [Procom]."
Concerning his employment with Procom and his contacts with the State of Texas, Smith stated in his affidavit:
 "4. When I was employed by Procom, the vast majority of the time I performed my duties in the State of Alabama. Occasionally, I was called to perform work in Georgia. I never performed any work in the State of Texas and my contacts to Texas were limited to occasional emails to Russell Leitch and receiving my paycheck from there.
 "5. I do not own any real property, personal property, or other assets located in Texas.
". . . .
 "7. During my employment with Procom, I can remember both Hal Crews and Russell Leitch coming into Alabama for business associated directly with Procom matters. I remember them being in this state at least three times each. I also know that Russell Leitch owns warehousing in Alabama.
 "8. Calculation of payroll of employees of Procom in Alabama, including my own[,] was done in Alabama. Those responsible for calculating payroll still reside here. They are Katherine Price, Amy Weeks, and a woman named Tracey *Page 831 
who still works for Procom but [whose] last name I cannot recall.
 "9. The original records of payroll relevant to my claim are, to the best of my knowledge, still in Alabama.
 "10. I know of at least two other former employees of Procom whose employment contracts were breached in the same manner as my own. They are John Crosby and Hank Smith, Sr.[,] my father. John Crosby lives in Alabama. Hank Smith, Sr. lives in Utah. I know of three other former employees of Procom who never received the full amount of their reserve pay.
 "11. Those who have personal knowledge of the day-to-day goings on at Procom while I was employed there still reside in Alabama, except for Russell Leitch and Hal Crews."
In regard to their contacts with the State of Alabama, Leitch and Crews affirmed identically, in relevant part:
 "3. I do not own any real property, personal property, or other assets located in Alabama, nor does any member of my family.
". . . .
 "5. I have not worked in the State of Alabama, never earned any income attributable to work in that state, paid any taxes there, or filed any tax returns there.
 "6. I have never solicited or conducted any business in the State of Alabama, nor have I ever advertised in Alabama for any business on my behalf or on behalf of anyone else. I have also never sent any agents or employees into Alabama to solicit or conduct any business on my personal behalf.
 "7. I do not have, nor have I ever had, any bank accounts, offices, or telephone listings in the State of Alabama.
"8. I own no stock in any Alabama corporations.
 "9. I have not contracted to supply any goods or services in Alabama, nor have I derived any revenues from goods used or consumed or services rendered in Alabama.
 "10. None of the actions attributed to me in the complaint were performed in Alabama.
 "11. I have never been previously sued (or brought suit) in an Alabama court. No Alabama court has ever before exercised personal jurisdiction over me.
 "12. I have never before knowingly or intentionally availed myself of the benefits and protections of the laws of Alabama.
 "13. Having to defend this case in Alabama would work a substantial hardship on me and my family."
 III. Enforcement of the Outbound Forum-Selection Clause
In their petition for a writ of mandamus, Procom, Leitch, and Crews contend that they have a clear legal right to have the outbound forum-selection clause enforced because, they say, Smith did not show that enforcement of the forum-selection clause would be unfair or unreasonable. This Court, in Ex parte Rymer, supra, stated:
 "Alabama has adopted the majority rule that an outbound forum-selection clause should be enforced so long as enforcement is neither unfair nor unreasonable under the circumstances of the case. Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 351 (Ala. 1997). The party challenging the enforcement of such a clause has the burden of clearly establishing either
 "`(1) that enforcement of the forum-selection clause would be unfair on *Page 832 
the basis that the contract . . . [was] affected by fraud, undue influence, or overweening bargaining power or (2) that enforcement would be unreasonable on the basis that the chosen . . . forum would be seriously inconvenient for the trial of the action.'
"Sutherland, 700 So.2d at 352."
860 So.2d at 341.
In Smith's response to the motion to dismiss, he asserted that the contract was "affected by fraud" because, he alleged, "Crews and Leitch promised [him] at least one thousand ($1,000.00) per week. When they promised [him] that wage they did not intend to abide by the agreement." Smith also stated that "[i]f permitted to proceed with discovery and trial of this issue [i.e., fraud], [he] will prove that the Defendants engaged in a consistent practice of shorting employees the agreed upon amount of wages." He stated in his affidavit that he knew "of at least two other former employees of Procom whose employment contracts were breached in the same manner as [his] own" and that he knew of "three other former employees of Procom who never received the full amount of their reserve pay."
In determining whether a contract has been "affected by fraud," this Court has stated:
 "[T]he proper inquiry is whether the forum-selection clause is the result of fraud in the inducement in the negotiation or inclusion in the agreement of the forum-selection clause itself. If the forum-selection clause is the result of fraud in the inducement, then the fraud exception to the enforceability of the clause applies. However, if the claim of fraud in the inducement is directed toward the entire contract, the fraud exception to enforcement of the forum-selection clause does not apply. Cf. Investment Mgmt. Research, Inc. v. Hamilton, 727 So.2d 71, 78 (Ala. 1999) (`[W]hen a claim of fraud in the inducement is directed toward the arbitration clause itself, the issue is adjudicated by the court. On the other hand, when a claim of fraud in the inducement is directed toward the entire contract . . . the issue is subject to arbitration.')."
Ex parte Leasecomm Corp., 879 So.2d 1156, 1159 (Ala. 2003). Smith has not alleged that the forum-selection clause itself was affected by fraud; he has alleged only that he relied upon fraudulent statements pertaining to his salary when he entered into the employment contract. Therefore, he has failed to meet his burden of "clearly establish[ing]" that enforcement of the forum-selection clause was unfair because the clause was "affected by fraud." Ex parte Rymer, 860 So.2d at 341.
In his response to the defendants' motion to dismiss, Smith asserted also that the contract was affected by overweening bargaining power, stating in support of that assertion that Procom, Leitch, and Crews "put the forum clause common in their Alabama employment contracts to disway [sic] employees and former employees from enforcing their employment agreements due to the cost of litigating the relatively small amounts at issue in Dallas, Texas." This conclusory statement does not establish that the employment contract was affected by overweening bargaining power; accordingly, Smith has failed to establish that enforcement of the outbound forum-selection clause would be unfair.
Smith further contended in his response to the motion to dismiss that enforcement of the forum-selection clause "would be unreasonable on the basis that Dallas, Texas would be seriously inconvenient for the trial of this action." Smith elaborated: *Page 833 
 "Almost all of the relevant witnesses to this action are located in or about Jefferson County. Those who calculated payroll are located in Jefferson County. The relevant documents are all located in and around Jefferson County. Those who are aware of the day-to-day operations of [Procom] are located in Jefferson County. To try these issues in Dallas, Texas would require all of these witnesses and documentation located here to be transferred to Dallas. There are at least five witnesses that [Smith] will require to prove his case. The expense and time associated with transferring five people in addition to [Smith], and all relevant documents to Dallas to litigate makes trial of these issues thus seriously inconvenient."
In Ex parte Rymer, supra, we stated:
 "In order to demonstrate that the chosen forum is seriously inconvenient, the party challenging the clause must show that a trial in that forum would be so gravely difficult and inconvenient that the challenging party would effectively be deprived of his day in court. Ex parte Northern Capital Res. Corp., 751 So.2d [12] at 15 [(Ala. 1999)].
 "`When an agreement includes a clearly stated forum-selection clause, a party claiming that clause is unreasonable and therefore invalid will be required to make a clear showing of unreasonableness. In determining whether such a clause is unreasonable, a court should consider these five factors: (1) Are the parties business entities or business persons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should the parties have been able to understand the agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient? We state these items not as requirements, but merely as factors that, considered together, should in a particular case give a clear indication whether the chosen forum is reasonable.'
 "Ex parte Northern Capital Res. Corp., 751 So.2d at 14."
860 So.2d at 342-43.
First, Procom is a corporation, which, according to its petition for a writ of mandamus, hired Smith to "supervise the activities of [its] sales force and to perform other duties to be determined from time to time by Procom." The record does not establish Smith's profession before his employment with Procom, but we can infer that he had sufficient business acumen so as to be qualified to be hired in a supervisory capacity. Second, the contract was an employment agreement between Procom and Smith. Third, Procom's headquarters are located in the chosen forum, Dallas, Texas, and according to its petition, "witnesses and documents necessary for [Procom, Leitch, and Crews's] defense are located in Dallas County, Texas." Also, Leitch and Crews are residents of Dallas, Texas. Fourth, Smith does not allege that he was unable to understand the terms of the employment contract, and the outbound forum-selection clause is clearly and unambiguously written. Fifth, Smith does not allege that extraordinary circumstances have arisen that would make Dallas, Texas, seriously inconvenient as a forum.
We conclude that a consideration of these five factors, as applied to this case, does not clearly indicate that a trial in Dallas, Texas, would be so difficult and inconvenient that it would effectively deprive Smith of his day in court. Ex parteRymer, supra. As we have noted, the forum-selection clause also provides that *Page 834 
"the prevailing party shall be reimbursed by the other party for all costs and expenses (including, without limitation, attorney's fees and costs) incurred in connection with such action or proceeding."
Accordingly, Smith failed to clearly establish that enforcement of the outbound forum-selection clause would be either unfair or unreasonable.
 IV. Enforceability of Outbound Forum-Selection Clause by Nonsignatories
Leitch and Crews state in the petition for a writ of mandamus that they "are both entitled to have the outbound forum-selection clause applied to Smith's claims asserted against them" even though they were not signatories to Smith's employment agreement with Procom. Leitch and Crews cite no Alabama cases that directly address the issue whether a forum-selection clause can apply to one who was not a signatory to the contract containing it, nor has our research revealed any Alabama case directly on point. However, federal courts have held that forum-selection clauses bind nonsignatories that are closely related to the contractual relationship or who are "transaction participants." See, e.g.,Hugel v. Corporation of Lloyd's, 999 F.2d 206, 209-10 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be `closely related' to the dispute such that it becomes `foreseeable' that it will be bound."); Manetti-Farrow,Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n. 5 (9th Cir. 1988) ("We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."); Brock v. Entre Computer Ctrs., Inc.,740 F.Supp. 428, 431 (E.D.Tex. 1990) ("[T]he court finds that the forum selection clause applies to all parties to the contract, whether signatories or not."); and Clinton v. Janger, 583 F.Supp. 284,290 (N.D.Ill. 1984) ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses"). This authority is persuasive, but not binding. See Weems v. Jefferson-Pilot Life Ins. Co.,663 So.2d 905, 913 (Ala. 1995), quoting Ex parte Gurganus, 603 So.2d 903,908 (Ala. 1992) ("`[t]his Court may rely on a decision of any federal court, but it is bound by the decisions of the United States Supreme Court'").
We also note an analogy between this Court's enforcement of arbitration clauses as to nonsignatories to a contract and the enforcement of the forum-selection clause in this instance. This Court has stated that "[i]f a nonsignatory's claims are `intertwined with' and `related to' the contract, arbitration can be enforced." Cook's Pest Control, Inc. v. Boykin,807 So.2d 524, 527 (Ala. 2001); see also Stevens v. Phillips,852 So.2d 123, 130 (Ala. 2002), quoting Pritzker v. Merrill Lynch, Pierce,Fenner Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993) ("`"Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."'"), and Exparte Gray, 686 So.2d 250, 251 (Ala. 1996) ("A party should not be able to avoid an arbitration agreement merely by suing an employee of a principal."). Because Smith's claims against Leitch and Crews arise out of statements Leitch and Crews allegedly made while negotiating Smith's employment contract with Procom, we conclude that Leitch and Crews are entitled to enforce the outbound forum-selection clause contained in the employment contract.
 V. Conclusion
Accordingly, we conclude that Procom, Leitch, and Crews have shown a clear legal right to have the action against them *Page 835 
dismissed on the basis that venue in the Jefferson Circuit Court is, by application of the outbound forum-selection clause, improper. The trial court exceeded its discretion in denying their motion to dismiss. We direct the court to dismiss this cause, without prejudice, pursuant to Rule 12(b)(3), Ala.R.Civ.P.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, LYONS, BROWN, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and concurs in the result.