F.L. Crane Sons, Inc. ("Crane"), appeals the trial court's order denying its motion to compel arbitration and mediation, see Rule 4(d), Ala. R.App. P.; Crane purports also to appeal the trial court's order denying its motion to dismiss for improper venue. We affirm the trial court's denial of Crane's motion to compel arbitration. Insofar as Crane's appeal challenges the trial court's denial of its motion to dismiss, we treat it as a petition for the writ of mandamus, and we deny the petition.
 Facts and Procedural History
Malouf Construction Corporation ("Malouf"), a Mississippi corporation, entered into a contract with Palm Beach Condominiums, LLC ("Palm Beach"), for the construction of the Palm Beach Condominiums in Orange Beach ("the prime contract"). Malouf then entered into a subcontract with Crane, in which Crane agreed to furnish and install an exterior insulation-and-finish system on the condominiums ("the subcontract").[1]
The subcontract contains a choice-of-law provision, which says that Mississippi law will govern any dispute arising between Malouf and Crane. That provision reads as follows:
 "The Subcontract is deemed to have been made in the State of Mississippi regardless of the place of actual negotiation, execution, and performance, and the parties hereby agree that the laws of the State of Mississippi shall govern the interpretation, effect, enforcement, and all other aspects of both this Subcontract and the rights and obligations of Contractor and Subcontractor hereunder. This consensual choice of law shall apply irrespective of principles of conflict of laws, envoi, forum non conveniens, or other considerations."
The subcontract also contains a forum-selection clause, which states that any dispute between Crane and Malouf will be litigated either in Madison County, Mississippi, or in the Southern District of Mississippi. The forum-selection clause reads as follows:
 "Any dispute between the parties shall be resolved by litigation in a court of competent jurisdiction located either in Madison County, Mississippi, if a state court action, or in the Southern District of Mississippi, if a federal court action. . . . By execution of this Subcontract, Subcontractor irrevocably waives any objection, now or in the future, to such venue and agrees not to assert in any such court that any action or proceeding has been brought in an inconvenient or inappropriate forum."
The subcontract also incorporates into the subcontract the terms of the prime contract between Malouf and Palm Beach:
 "The Subcontractor [Crane] shall be bound to the Contractor [Malouf] by all terms and conditions of this Subcontract and by all terms and conditions of the Prime Contract between the Owner [Palm Beach] and Contractor [Malouf], which is incorporated by reference into this Subcontract and is an integral part of this Subcontract."
However, the alternative-dispute-resolution ("ADR") provisions of the subcontract and the prime contract appear to conflict. Paragraph 4.5.1 of the prime contract provides for mandatory mediation; it states:
 "Any Claim arising out of or related to the [Prime] Contract . . . shall . . . be *Page 369 
subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party."
Similarly, paragraph 4.6.1 of the prime contract provides for mandatory arbitration; it states
 "Any Claim arising out of or related to the [Prime] Contract . . . shall . . . be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5."
In contrast, the subcontract provides for permissive ADR procedures and provides that no ADR procedures shall be mandatory. Paragraph 27.1 of the subcontract purports to govern
 "all claims, disputes, and other matters in controversy or question between the Contractor and the Subcontractor arising out of or relating to th[e] Subcontract. . . ."
Paragraph 27.2 of the subcontract states that, in the event of a dispute,
 "the parties shall consider alternative dispute resolution (ADR) . . . but no such ADR procedure shall be mandatory unless both contractor and subcontractor enter into a separate agreement to submit, their disputes to ADR."
The prime contract outlines a detailed ADR procedure, requiring the contractor and the owner (here, Palm Beach) to submit any disputes to the architect. After the architect renders a decision in the dispute, the parties must proceed to mediation and then to arbitration. However, the prime contract in paragraph 4.4.1 limits the application of these provisions: "The Architect will not decide disputes between [Malouf] and persons or entities other than [Palm Beach]."
After the condominiums were built, Palm Beach Owner's Association, Inc. ("the Association"), whose membership comprises all record owners of the units in the Palm Beach Condominiums, sued Malouf and Palm Beach in the Baldwin Circuit Court, alleging defects in the construction. Malouf filed a third-party complaint against Crane and several other subcontractors, alleging breach of contract, breach of warranty, and negligent performance.
Crane answered Malouf's third-party complaint, asserting as a defense that Malouf's claims against it were subject to resolution by mandatory binding arbitration. In its amended answer, Crane also asserted as a defense that the forum-selection clause in the subcontract required the claims to be litigated, if at all, in a state court in Madison County, Mississippi, or in the United States District Court for the Southern District of Mississippi. Crane moved the trial court to compel arbitration and to stay the proceedings or, in the alternative, to dismiss the case without prejudice on the basis that venue in the Baldwin Circuit Court was improper under the forum-selection clause.
Malouf responded that the trial court should enforce the permissive arbitration and mediation provisions of the subcontract instead of the mandatory provisions in the prime contract. Malouf also argued that the forum-selection clause in the subcontract should not be enforced because trying the case in Mississippi would result in serious inconvenience to Malouf.
After a hearing, the trial court, in separate orders, denied Crane's motion to compel mediation and arbitration and denied Crane's motion to dismiss the action based on improper venue. Crane appeals both orders. *Page 370 
 Standard of Review
The parties agree that Mississippi law governs the substantive issues of this case. They also agree that Alabama law governs the procedural issues, including the standard of review. Alabama courts apply a de novo standard of review to the denial of a motion to compel arbitration. See Leeman v. Cook's PestControl, Inc., 902 So.2d 641, 644 (Ala. 2004) ("`"[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is ade novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review."'" (quoting other cases)). When reviewing the enforcement of, or the refusal to enforce, a forum-selection clause, however, Alabama courts must determine whether the trial court exceeded its discretion. See Ex parte ProcomServs., 884 So.2d 827, 830 (Ala. 2003).
 Analysis
I. Crane's Motion to Compel Arbitration and Mediation
This Court has held that, when determining whether parties agreed to arbitrate a particular dispute, the court must apply "`"ordinary state-law principles that govern the formation of contracts."'" AmSouth Bank v. Dees, 847 So.2d 923, 933
(Ala. 2002) (quoting Ex parte Messer, 797 So.2d 1079,1082 (Ala. 2001), quoting in turn First Options of Chicago,Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Because this contract is governed by the substantive law of Mississippi, we use Mississippi contract principles to construe the arbitration and mediation provisions.
Under Mississippi law, a court must consider three factors when ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether any defense available under Mississippi contract law, such as fraud, duress, or unconscionability, applies to invalidate the arbitration agreement. East Ford v. Taylor, 826 So.2d 709, 713
(Miss. 2002). The parties agree that this appeal hinges on the first prong: whether the prime contract and the subcontract created an agreement requiring Malouf to arbitrate its claims against Crane.
The parties disagree as to which clauses of which contract should apply. Crane argues that the requirement in the prime contract of mediation and arbitration applies to this dispute because the subcontract incorporates the provisions of the prime contract. Thus, it asserts, "the mandatory, binding mediation and arbitration clauses in Paragraphs 4.5 and 4.6 of the Prime Contract control to the exclusion of the voluntary dispute resolution clauses in Paragraph 27.2 of the Subcontract." (Crane's brief, p. 23.) Malouf contends that the prime contract is irrelevant to the dispute between it and Crane because it governs only the relationship between Palm Beach and Malouf; Malouf argues that the subcontract governs the relationship between Malouf, the contractor, and Crane, the subcontractor. Thus, Malouf argues, this Court should look to the terms of the subcontract and under the subcontract "it is very clear that arbitration and mediation are voluntary." (Malouf's brief, p. 17.)
The subcontract provides that Malouf and Crane "shall be bound . . . by all terms and conditions of [the] Subcontract and by all terms and conditions of the Prime Contract." Subcontract, paragraph 2. The ADR procedures in the prime contract purport to govern "any claims arising out of or related to the [Prime] Contract." *Page 371 
Prime contract, paragraph 4.5.1.[2] Although these provisions appear to conflict, they bind different parties and therefore create no ambiguity or conflict.
Under Mississippi law, when a court is construing the terms of a contract, the "cardinal rule of construction is to give effect to the mutual intentions of the parties." Lamb Constr. Co. v.Town of Renova, 573 So.2d 1378, 1383 (Miss. 1990). In doing so, a court accepts the plain meaning of the terms as expressing the intent of the parties where no ambiguity exists. A F Props., LLC v. Madison County Bd. of Supervisors,933 So.2d 296 (Miss. 2006).
The subcontract and the prime contract do not conflict; the ADR provisions in the subcontract and the prime contract apply to different parties. The provisions of the subcontract apply directly to the relationship between the subcontractor and the contractor (here, Crane and Malouf).[3] The "Resolution of Claims and Disputes" section of the prime contract, on the other hand, applies expressly to disputes between the contractor and the owner (here, Malouf and Palm Beach). Specifically, the prime contract requires that "all Claims between the Contractor and Owner" be submitted to the architect "as a condition precedent to mediation, arbitration or litigation." Further, both the "Mediation" and the "Arbitration" sections of the prime contract provide for mediation and arbitration "after initial decision by the Architect or 30 days after submission of the Claim to the Architect," Prime contract, paragraphs 4.5-4.6. Because the prime contract states that "[t]he Architect will not decide disputes between the Contractor and persons or entities other than the Owner," it is unmistakable that the ADR procedures in the prime contract are intended only to govern disputes between Malouf and Palm Beach.
Crane argues that the prime contract governs this dispute because the subcontract incorporates the terms of the prime contract. That incorporation results in the adoption of the terms of the prime contract into the subcontract. Sorrellsv. Alexander Bros., 165 Miss. 466, 144 So. 560, 562 (1932). However, it does not abolish the dispute-resolution scheme in place in the subcontract between Malouf and Crane. SeePerry v. United States ex rel. Newell, 146 F.2d 398, 400
(5th Cir.1945) ("[W]hile a reference in a subcontract to the provisions, plans and specifications of a general contract imports them into the subcontract where not inconsistent with its terms, it is quite well settled that such a reference is not effective beyond this, and that if the subcontract contains words of definite limitation, they will be given effect and the reference limited accordingly."). Nor does it create an ambiguity in the agreement because, as previously discussed, the provisions in the subcontract and the prime contract govern different disputes between different parties. *Page 372 
II. Crane's Motion to Dismiss Based on Improper Venue
We have held that a petition for the writ of mandamus is the proper method for obtaining review of an order denying a motion to dismiss seeking the enforcement of an outbound forum-selection clause. Ex parte CTB, Inc.,782 So.2d 188, 190 (Ala. 2000). However, instead of petitioning for the writ of mandamus, Crane appealed. In its brief, Malouf argues that we should refrain from reviewing the trial court's order because it was presented to us as an appeal and not as a petition for a writ of mandamus.
Crane urges us to treat its appeal from the order denying its motion to dismiss as a petition for the writ of mandamus. Crane cites two cases in support. In one, this Court treated a notice of appeal as a petition for the writ of mandamus. MorrisonRests, Inc. v. Homestead Village of Fairhope, Ltd.,710 So.2d 905 (Ala. 1998) (stating that "[t]his Court has previously held that a petition for a writ of mandamus is the appropriate method of challenging an order referring a case to arbitration," and treating Morrison's appeal as a petition for the writ of mandamus). In the other, this Court treated a petition for a writ of mandamus as a notice of appeal. Ex parte Burch,730 So.2d 143 (Ala. 1999). Crane also argues that Rules 1 and 2 of the Alabama Rules of Appellate Procedure likewise compel us to treat its appeal from the denial of its motion to dismiss as a petition for the writ of mandamus. Rule 1, Ala. R.App. P., provides: "[These rules] shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits." Rule 2, Ala. R.App. P., allows for the suspension of the requirements or provisions of any of the appellate rules "[i]n the interest of expediting decision."
In Ex parte Burch, we treated a petition for the writ of mandamus addressed to a trial court's denial of a motion in limine as a notice of appeal. We stated in Burch that there is "no bright-line test for determining when this Court will treat a particular filing as a mandamus petition and when it will treat it as a notice of appeal." 730 So.2d at 146. Instead, we consider the facts of the particular case in deciding whether to treat the filing as a petition or as an appeal:
 "The question we come to, then is this: Do the circumstances of this case make it such that the policies set forth in Rule 1[, Ala. R.App. P.,] will be served by resolving the matter presented to us? Or, will those policies be better served by requiring, as we do in the normal case, strict compliance with our appellate rules and thus not reviewing the trial court's interlocutory ruling?"
730 So.2d at 147.
In Burch, we treated the petition as a petition for a permissive appeal under Rule 5, Ala. R.App. P., because the hearing transcript revealed the trial court's belief that this Court's resolution of the motion in limine was "important to materially advancing th[e] litigation." 730 So.2d at 147-48. Similarly, we believe that deciding the issue of the enforceability of this forum-selection clause on its merits will further the "just, speedy, and inexpensive determination . . . on [the] merits" of the case favored by Rule 1, Ala. R.App. P.
It is well-settled that mandamus is an extraordinary writ, requiring a showing that there is "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." MorrisonRestaurants, 710 So.2d at 907 (quoting Ex parte Alfab,Inc., *Page 373 586 So.2d 889, 891 (Ala. 1991)). Crane has not demonstrated a "clear legal right" to a writ of mandamus ordering the trial court to dismiss Malouf's claims against it based on the outbound forum-selection clause in the subcontract. This Court has recognized that outbound forum-selection clauses actually "`implicate the venue of a court. . . .'" Ex parte CTB,Inc., 782 So.2d at 190 (quoting and approving language from dissent in O'Brien Eng'g Co. v. Continental Machs.,Inc., 738 So.2d 844, 849 (Ala. 1999) (See, J., dissenting)). Therefore, an outbound forum-selection clause raises procedural issues and is governed by the aw of the forum jurisdiction — in this case, the law of Alabama. See, e.g., Exparte Procom Servs., Inc., 884 So.2d 827 (Ala. 2003) (deciding the validity of an outbound forum-selection clause under Alabama law despite a choice-of-law clause in the contract stating that Texas law governed disputes between the parties). In Alabama, we review the trial court's decision on the enforcement of such a clause to determine whether the trial court exceeded its discretion in deciding not to enforce the outbound forum-selection clause. See Ex parte ProcomServs., 884 So.2d at 830.
Forum-selection clauses are enforceable under Alabama law.Ex parte Rymer, 860 So.2d 339, 341 (Ala. 2003). However, this Court has held that a forum-selection clause should not be enforced if the chosen forum would be "`seriously inconvenient for the trial of the action.'" Ex parteLeasecomm, Corp., 886 So.2d 58, 62 (Ala. 2003) (quotingEx parte CTB, Inc. 782 So.2d at 191). Such a "serious inconvenience" arises if enforcement of the forum-selection clause "`would result in two lawsuits involving similar claims or issues being tried in separate courts.'" 886 So.2d at 63
(quoting Alpha Sys. Integration, Inc. v. Silicon Graphics,Inc., 646 N.W.2d 904, 909 (Minn.Ct.App. 2002)) (emphasis omitted). Malouf argues that just such a serious inconvenience would exist in this case if we ordered the trial court to enforce the outbound forum-selection clause. In the underlying action, the Association has asserted claims against Malouf arising from Malouf's general construction of the Palm Beach Condominiums; Malouf has, in turn, brought third-party claims against Crane and several other subcontractors. Malouf argues that enforcement of the outbound forum-selection clause in this case would move the litigation of the claims between Malouf and Crane to Mississippi, where, Malouf argues, they would be litigating claims and issues identical to those being tried in Alabama between Malouf and the Association and between Malouf and the other subcontractors, all of which arose out of the same construction job as did Malouf's claims against Crane. If its claims against Crane are transferred, Malouf argues, it would be subject to duplicative discovery and litigation.
Crane asks us to transfer the claims involving Malouf and Crane to Mississippi, while all the other related claims remain in Alabama. Crane argues that the action brought in Alabama by the Association involves claims and parties "wholly unrelated to anything Crane did in the construction of Palm Beach Condominiums," and that the action in Mississippi would involve the "sole issue" whether Crane properly completed its work during the construction. Crane is correct that the action brought by the Association involves other parties unrelated to Malouf's third-party action against Crane and therefore involves issues that may not be present in the third-party action, but the opposite is not necessarily true. Malouf's claims against Crane involve issues that will be litigated in the Association's action. Both *Page 374 
cases will likely involve interpretation of the same contract terms, and Malouf's testimony as to its activities during construction will be necessary in both actions. Litigation of the same issues, arising out of the same construction project, could therefore cause Malouf "serious inconvenience."
Based on these facts, we cannot conclude that the trial court exceeded its discretion when it refused to enforce the out-bound forum-selection clause and denied the motion to dismiss the action based on improper venue. Therefore, Crane has no "clear legal right" to the writ of mandamus.
 Conclusion
Crane has not demonstrated that the trial court clearly erred by denying its motion to compel arbitration. Thus, we affirm the trial court's denial of Crane's motion to compel arbitration. Also, the trial court did not exceed its discretion in denying Crane's motion to dismiss. Thus, we deny Crane's petition for the writ of mandamus.
PETITION DENIED; AFFIRMED.
NABERS, C.J., and LYONS, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] Although it is not clear from the record, Crane apparently is also a Mississippi corporation.
[2] Crane contends that the conflict can be resolved by reference to paragraph 2 of the subcontract, which states that in the event of a conflict "the Subcontractor shall perform Work and obligations of the higher quality, larger quality, greater expense, tighter schedule, and more stringent requirements." Crane would apply this language to the dispute at issue, arguing that mandatory ADR is, by definition, `more stringent" than is permissive ADR. However, we do not find this argument persuasive. By its terms, this provision resolves conflicts regarding the subcontractor's "Work and obligations" only.
[3] Paragraph 27.1 of the subcontract states:
 "[A]ll claims, disputes, and other matters in controversy or question between the Contractor and the Subcontractor arising out of or relating to this Subcontract . . . shall be decided in accordance with this Section."