BOLIN, Justice.
Jewels by Park Lane, Inc. (hereinafter referred to as "JBPL"), and Kathy Cassidy, the national director for JBPL, seek a writ of mandamus compelling the Tallapoosa Circuit Court to vacate its order denying their motion to dismiss an action against them on the ground of improper *1153 venue arising out of a forum-selection clause and to enter an order dismissing the case. We grant the petition and issue the writ.
Facts and Procedural History
JBPL is a multilevel marketing company that sells jewelry through independent contractors who host parties offering JBPL's jewelry line for sale. Jennifer Miller lives and works in Alabama. In July 2015, Miller attended an annual convention hosted by JBPL in Rosemont, Illinois. At that time, Miller worked for a competitor of JBPL.
On August 4, 2015, Miller and JBPL entered into a "director agreement." The front of the agreement set out Miller's personal information along with the name of the JBPL person who "sponsored" her and the name of the JBPL manager to whom Miller would answer. The director agreement further provided, in pertinent part:
"I hereby apply to become an Independent Contractor of [JBPL]. As an Independent Contractor of JBPL, I understand and agree to the following terms:
"....
"16. The director agrees that this Agreement has been drafted in accordance with the laws of the state of Illinois, and that the company is a [sic] Illinois corporation. The director agrees that the company may use equitable remedies (including specific performance and injunctive relief) in addition to any other remedies available, for any actions of the director which may be deemed to be in violation of this Agreement or in violation of any of the company's programs. Any disputes arising hereunder shall be solely governed by and interpreted in accordance with the laws of the state of Illinois and personal and subject matter jurisdiction is solely vested in the courts of the state of Illinois."
The reverse side of the agreement contains a space for the name and address of the executive training manager to whom Miller's jewelry kit is to be sent. That space has one word filled in; it appears to read "Sent." The reverse side of the director agreement also provides spaces for the director, i.e., Miller, to set out the upcoming home parties at which JBPL's jewelry line will be displayed to potential customers. This part of Miller's director agreement is blank.
Another part of the director agreement provides, in pertinent part, as follows:
"Leader Direct Appointment Approval Authorization
"(Complete the following when Applicable.)
"1. Experienced candidate to be appointed to the management level of:
"___________.
"2. Explain the candidate's party plan/direct sales management experience. List companies he/she has represented and position/titles previously achieved.
"___________.
"3. Have you discussed this appointment with your Sr. Division and/or Vice-President?
"___________.
"Their name:___________
"4. Verbal approval from a Home Office executive must be obtained prior to extending an offer of direct appointment to a management level. A manager agreement submitted without prior Home Office authorization cannot be processed.
"I verbally secured Home Office approval from:
"___________.
*1154 "Sponsor's Signature:
"___________.
"I acknowledge that the information regarding my experience is accurate and true.
"Leader candidate's signature:
"
"Date:___________"
This part of Miller's director agreement has been completed with the relevant information.
On June 7, 2016, Miller sued JBPL and Cassidy. Miller alleged that JBPL promised to employ her for a 12-month period and to pay her $4,000 a month for that period. Miller set out claims alleging account stated, open account, breach of contract, and fraud. Miller sought compensatory damages, punitive damages, and attorney fees. Miller attached a letter to her complaint. The letter, dated "August 2015," provides:
"Dear Jennifer,
"Congratulations on your appointment to the Executive Position of Sales Vice President. As was shared with you confidentially in our meeting, in addition to our very generous compensation plan for the position of Sales Vice President, you will receive the following:
"For a period of 1 year: (review at end)
"$4,000 per month with an expectation to build to 10 new personal/group recruits who begin on a Wednesday payroll date in the same calendar month with a minimum of $500 net (commissionable) sales.
"In addition:
"$1,000 for every additional 10 new personal/group recruits, over and above the initial 10 and meeting the same sales and start date requirements, to a maximum of $8,000/month.
"This bonus will be paid on the first payroll of the following month and be attached to your paycheck earned through personal commission and/or group sales overrides.
"You May also choose 7 sets from our new catalog (pgs 1-87) to add to your kit.
"Welcome to the Park Lane Family, Jennifer. We look forward to working together for many years to come!
"/s/ Kathy Cassidy"
On August 12, 2016, JBPL and Cassidy filed a joint Rule 12(b)(3), Ala. R. Civ. P., motion to dismiss Miller's action based on improper venue. They argued that the outbound forum-selection clause in the director agreement required Miller to bring her action in Illinois. Subsequently, Miller amended her complaint to include a fraud-in-the-inducement claim. Miller admitted that the director agreement contained a forum-selection clause but argued that she would not have entered into the agreement but for the fraud perpetuated by JBPL and Cassidy. The defendants responded, arguing that, in order to void the forum-selection clause, the fraud must be directed to that particular clause and not to the contract as a whole. Following a hearing at which the parties discussed only the arguments related to the defendants' Rule 12(b)(3) motion, the trial court denied the defendants' motion to dismiss.[1] JBPL and Cassidy timely filed a petition for a writ of mandamus.
Standard of Review
" 'Mandamus is a drastic and extraordinary writ, to be issued only where *1155 there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995)."
Ex parte CTB, Inc., 782 So.2d 188, 190 (Ala. 2000).
"[A]n attempt to seek enforcement of the outbound forum-selection clause is properly presented in a motion to dismiss without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P., for contractually improper venue. Additionally, we note that a party may submit evidentiary matters to support a motion to dismiss that attacks venue. Williams v. Skysite Communications Corp., 781 So.2d 241 (Ala. Civ. App. 2000), quoting Crowe v. City of Athens, 733 So.2d 447, 449 (Ala. Civ. App. 1999)."
Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala. 2001).
Discussion
At the outset, we note that "[a]n outbound forum-selection clause-a clause by which parties specifically agree to trial outside the State of Alabama in the event of a dispute-implicates the venue of a court rather than its jurisdiction. See Ex parte CTB, Inc., 782 So.2d 188 (Ala. 2000) ; and O'Brien Eng'g Co. v. Continental Machs., Inc., 738 So.2d 844, 845 n. 1 (Ala. 1999)." Ex parte Leasecomm Corp., 879 So.2d 1156, 1158 (Ala. 2003). In F.L. Crane & Sons, Inc. v. Malouf Construction Corp., 953 So.2d 366 (Ala. 2006), this Court held that an outbound forum-selection clause raises procedural issues and is governed by the law of the forum jurisdiction addressing the issue, which, in that case, was this Court. The Crane Court relied on Ex parte Procom Services, Inc., 884 So.2d 827 (Ala. 2003), in which this Court decided the validity of an outbound forum-selection clause under Alabama law despite a choice-of-law clause in the contract stating that Texas law governed disputes between the parties.
In Professional Insurance Corp. v. Sutherland, 700 So.2d 347 (Ala. 1997), this Court adopted the majority rule that an outbound forum-selection clause should be enforced so long as its enforcement is neither unfair nor unreasonable under the circumstances. An outbound forum-selection clause is enforceable unless the party challenging the clause can clearly establish that enforcement of the clause would be unfair on the basis that the contract was affected by fraud, undue influence, or overweening bargaining power or that enforcement would be unreasonable on the basis that the chosen forum would be seriously inconvenient for the trial of the action. Ex parte Leasecomm, 879 So.2d at 1159.
With regard to the inconvenience of the selected forum, this Court has stated:
" ' "When an agreement includes a clearly stated forum-selection clause, a party claiming that clause is unreasonable and therefore invalid will be required to make a clear showing of unreasonableness. In determining whether such a clause is unreasonable, a court should consider these five factors: (1) Are the parties business entities or businesspersons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should the parties have been able to understand the agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient? We state these items not as requirements, but merely as factors that, considered together, should in a particular case give a *1156 clear indication whether the chosen forum is reasonable." ' "
Ex parte Nawas Int'l Travel Serv., Inc., 68 So.3d 823, 827 (Ala. 2011) (quoting Ex parte Rymer, 860 So.2d 339, 342-43 (Ala. 2003), quoting in turn Ex parte Northern Capital Res. Corp., 751 So.2d 12, 15 (Ala. 1999) ).
Here, Miller, the party challenging the forum-selection clause, has not shown that the chosen forum is a seriously inconvenient venue for the trial of this case. Miller contends that she was a "director" in name only and was not to operate as an independent contractor but, instead, was hired as a sales vice president for JBPL. However, Miller acknowledges that she signed the director agreement that contains the forum-selection clause. Miller does not argue that the forum-selection clause is ambiguous. The chosen forum is the location of JBPL's headquarters, and JBPL's sole office is in Illinois as well. Cassidy travels to JBPL's headquarters to conduct business on regular basis. Miller traveled to Illinois to attend the JBPL convention. Miller does not argue that any extraordinary circumstances have arisen since the director agreement was entered into that would make Illinois a seriously inconvenient forum.
We now turn to whether enforcement of the forum-selection clause would be unfair on the basis that the director agreement was affected by fraud, undue influence, or overweening bargaining power. Miller does not argue that she was subject to undue influence in the negotiation or execution of the director agreement or that JBPL or Cassidy had overweening bargaining power over her. Instead, Miller asserts that the defendants fraudulently induced her to sign the director agreement.
This Court has explained:
"[T]he proper inquiry is whether the forum-selection clause is the result of fraud in the inducement in the negotiation or inclusion in the agreement of the forum-selection clause itself. If the forum-selection clause is the result of fraud in the inducement, then the fraud exception to the enforceability of the clause applies. However, if the claim of fraud in the inducement is directed toward the entire contract, the fraud exception to enforcement of the forum-selection clause does not apply."
Ex parte Leasecomm, 879 So.2d at 1159 (emphasis added); see also Ex parte PT Solutions Holdings, LLC, 225 So.3d 37, 44-45 (Ala. 2016) (explaining that the logic behind considering the validity of the forum-selection clause before analyzing the validity of the contract as a whole is to ensure that the more general claims of contractual fraud will be litigated in accordance with the contractual expectations of the parties in selecting a forum).
In the present case, Miller argues that she was fraudulently induced to sign the director agreement as a whole. The fraud alleged was not specific to the forum-selection clause itself. See Ex parte Soprema, Inc., 949 So.2d 907 (Ala. 2006) (holding that the plaintiff did not meet the exception to the enforcement of the forum-selection clause where the plaintiff's allegations of fraud related to the agreement generally and were not directed to the forum-selection clause); Ex parte Procom Servs., Inc., 884 So.2d 827 (Ala. 2003) (holding that because the plaintiff alleged only that he had relied upon fraudulent statements pertaining to his salary when he entered into his employment contract, he failed to clearly establish that enforcement of the forum-selection clause was unfair as he failed to allege that the forum-selection clause was affected by fraud). Therefore, Miller failed to clearly establish that the enforcement of *1157 the forum-selection would be unreasonable or unfair.
Conclusion
Accordingly, we conclude that JBPL and Cassidy have shown a clear legal right to have the action against them dismissed on the basis that venue in the Tallapoosa Circuit Court is, by application of the outbound forum-selection clause, improper. The trial court exceeded its discretion in denying their motion to dismiss Miller's action. We direct the court to dismiss the cause, without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Parker, Murdock, Shaw, Main, Wise, and Bryan, JJ., concur.
Sellers, J., recuses himself.

The defendants also moved to dismiss Miller's complaint pursuant to Rule 12(b)(6), Ala. R. Civ. P. At the hearing on their motion to dismiss, the parties discussed only the forum-selection clause. In their mandamus petition, the defendants state that the petition is based solely on Rule 12(b)(3).