Rel: December 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0279

_____

### Ra'Drecia Reynolds

### v.

### Barry Adereti

### Appeal from Shelby Circuit Court
### (DR-22-201)

EDWARDS, Judge.

In November 2022, Barry Adereti ("the father") filed a petition in the Shelby Circuit Court ("the circuit court") seeking custody of A.R. ("the child"), who was in the custody of Ra'Drecia Reynolds ("the mother"). The father alleged that the mother had prevented him from exercising

visitation with the child pursuant to the parties' August 2019 out-of-court parenting agreement. The father's petition was assigned case number DR-22-201.00 ("the .00 action"). The mother filed an answer to the father's petition and presented a counterclaim seeking to terminate the father's parental rights.[1] Throughout the pretrial process, the father filed several motions requesting visitation with the child. On April 23, 2024, the circuit court granted the father's motions and awarded the father pendente lite visitation with the child.

In November 2024, the circuit court held a trial in the .00 action.[2] On January 6, 2025, before the circuit court entered an order or judgment resolving the .00 action, the father filed a motion requesting that the mother be held in contempt for her refusal to comply with the April 23,

---

[1]The circuit court lacked jurisdiction to entertain the mother's counterclaim to terminate the father's parental rights because exclusive original jurisdiction over such a claim lies with the juvenile court. See Ala. Code 1975, § 12-15-114(c)(2).

[2]The Shelby County Department of Human Resources filed a petition in the circuit court seeking to compel the father to pay child support to the mother; that petition was assigned case number DR-22-201.01. ("the .01 action"). The circuit court consolidated the .00 action and the .01 action for the November 2024 trial.

2024, pendente lite visitation order.[3]  On February 5, 2025, the circuit court entered an order modifying the child's custody; awarding the parties joint legal custody of the child; awarding the father sole physical custody of the child subject to the mother's visitation, including extended visitation during the child's summer vacation; and directing that neither party would be required to pay child support.[4]  The circuit court found that the father had satisfied both the standard for the modification of child custody set forth in Ex parte McLendon, 445 So. 2d 863 (Ala. 1984), and the best-interest-of-the-child standard.  Further, the circuit court expressly acknowledged the father's outstanding contempt motion but

---

[3]Although the case number in the style of the father's contempt motion contained in the record on appeal references only the .01 action, see note 2, supra, the record indicates that the contempt motion was filed in the .00 action as well.

[4]On December 23, 2024, the circuit court entered an order directing the father to submit a proposed final order containing certain provisions that the circuit court enumerated in its order.  The father did not submit a proposed order.  However, the mother appears to have misconstrued the circuit court's December 2024 order to be a final order, and she filed a motion that she styled as a motion to alter, amend, or vacate that order. The circuit court explained in its February 2025 order that the December 2024 order was not a final judgment but that it had held a hearing on the mother's motion and entertained her objections relating to the provisions enumerated in the December 2024 order before entering the February 5, 2025, order.  The record on appeal does not contain a transcript of that hearing.

noted that the contempt issue was not properly before the court at the time of the entry of the February 2025 order.[5]

On March 6, 2025, the mother filed a purported postjudgment motion directed to the February 2025 order, asserting that the father had failed to meet his burden under Ex parte McLendon. The circuit court denied the mother's motion on March 7, 2025. Also on March 7, 2025, the father filed a purported postjudgment motion directed to the February 2025 order, requesting that the order be amended to include a designated visitation-exchange location, to require that the mother's visitation be supervised, and to provide the father "authorization to record the child's telephone contacts with [the mother]" so that he could "monitor [the mother's] attempts to manipulate the child." The circuit court entered an order granting the father's motion on the same day. On April 3, 2025, the mother filed another purported postjudgment motion, again asserting that the father had failed to meet the Ex parte McLendon

---

[5]The circuit court's order also implicitly denied the mother's counterclaim to terminate the father's parental rights by awarding the father custody of the child. In any event, as previously noted in note 1, supra, the circuit lacked subject-matter jurisdiction over the mother's termination-of-parental-rights claim. See § 12-15-114(c)(2).

standard and further arguing that the father's purported postjudgment motion had contained new facts that had not been presented at trial and that the father had failed to comply with the visitation schedule set out in the February 2025 order. On April 4, 2025, the circuit court denied the mother's motion. The mother then filed a notice of appeal to this court. She argues, among other things, that the circuit court lacked subject-matter jurisdiction over the .00 action. For the reasons set forth below, we dismiss the mother's appeal in part and treat one aspect of her appeal as a petition for a writ of mandamus and deny the petition.

The record reveals that the parties lived together between 2010 and December 2015 or January 2016 but never married; the child was born in April 2013.[6] According to the evidence in the record, the child was the subject of a dependency action in the Shelby Juvenile Court ("the juvenile court") between 2016 and 2017;[7] that action was assigned case number

_____

[6]The record indicates that the father, if he had not been previously found to be the child's legal father, is the presumed father of the child. Ala. Code 1975, § 26-17-204(a)(5). In any event, the mother has not contested the child's paternity.

[7]It appears that the dependency action was instigated in response to allegations that the mother had physically abused the child's older sister.

JU-16-759 and ultimately contained three separate point designations -- .01, .02, and .03. The record indicates that the father was involved in the proceeding assigned the .03 point designation. It is unclear if he was a party in the proceedings assigned the other two point designations or what each of those proceedings was about. The juvenile court adjudicated the child dependent in April 2017 and, in August 2017, entered a dispositional order awarding custody of the child to the mother. The August 2017 dispositional order indicates that the father did not appear at the dispositional hearing. The father testified at the circuit court's November 2024 trial that he was present at the dispositional hearing but that he had been marked as not attending the hearing by the juvenile court because, he said, he had not received the results of a genetic test that would demonstrate that he was the child's biological father and would be eligible to be a relative resource for the child.[8] The juvenile court's dispositional order also provided that the dependency matter was "closed to further [c]ourt [r]eview, except to monitor" certain payments of court costs.

---

[8]The results of that genetic test appear in the record on appeal and indicate that the father is the child's biological father.

The mother presents three arguments in her brief on appeal. However, we take note of a jurisdictional issue that precludes our review of the mother's appeal.

> "'"It is well settled law that 'jurisdictional matters are of such magnitude that we take notice of them at any time and do so even <u>ex mero motu</u>.'" <u>Pace v. Utilities Bd. of Foley</u>, 752 So. 2d 510, 511 (Ala. Civ. App. 1999) (quoting <u>Singleton v. Graham</u>, 716 So. 2d 224, 225 (Ala. Civ. App. 1998)). ... Additionally, "[t]he question whether a judgment is final is a jurisdictional question, and the reviewing court, on a determination that the judgment is not final, has a duty to dismiss the case." <u>Hubbard v. Hubbard</u>, 935 So. 2d 1191, 1192 (Ala. Civ. App. 2006).'
>
> "<u>Parker v. Parker</u>, 946 So. 2d 480, 485 (Ala. Civ. App. 2006).
>
> "'"A final judgment is one that disposes of all the claims and controversies between the parties."' <u>Sanders v. Sanders</u>, 32 So. 3d 597, 599 (Ala. Civ. App. 2009) (quoting <u>Heaston v. Nabors</u>, 889 So. 2d 588, 590 (Ala. Civ. App. 2004)). '[A] trial court's failure to rule on a contempt motion relating to an interlocutory order would render any subsequent judgment nonfinal because the filing of the contempt motion would not be considered as having initiated a separate proceeding.' <u>Decker v. Decker</u>, 984 So. 2d 1216, 1220 (Ala. Civ. App. 2007)."

<u>Logan v. Logan</u>, 40 So. 3d 721, 723 (Ala. Civ. App. 2009). The circuit court failed to rule on the father's contempt motion related to the circuit court's April 23, 2024, pendente lite visitation order; thus, the circuit court's February 2025 order is not a final judgment.

7

Two of the mother's arguments on appeal concern the propriety of the circuit court's February 2025 order and its consideration of evidence submitted by the father after the November 2024 trial. Those issues are appropriate for review only after the entry of a final judgment. Accordingly, we dismiss the mother's appeal insofar as she makes arguments relating to the substance of the February 2025 order or to the circuit court's consideration of certain evidence.

However, although an appeal from a nonfinal judgment will normally result in the dismissal of the appeal, it is well established that this court has the discretion to treat an appeal from a nonfinal judgment as a petition for the writ of mandamus. Kirksey v. Johnson, 166 So. 3d 633, 643 (Ala. 2014); Fowler v. Merkle, 564 So. 2d 960, 961 (Ala. Civ. App. 1989). In making the decision whether to convert an appeal to a petition for the writ of mandamus, or vice versa, our supreme court has explained that "we [should] consider the facts of the particular case." F.L. Crane & Sons, Inc. v. Malouf Constr. Corp., 953 So. 2d 366, 372 (Ala. 2006). In addition, our supreme court has stated that an appellate court should ask the following questions:

> "'Do the circumstances of this case make it such that the
> policies set forth in Rule 1[, Ala. R. App. P.,] will be served by

8

resolving the matter presented to us? Or, will those policies be better served by requiring, as we do in the normal case, strict compliance with our appellate rules and thus not reviewing the trial court's interlocutory ruling?'"

F.L. Crane & Sons, 953 So. 2d at 372 (quoting Ex parte Burch, 730 So. 2d 143, 147 (Ala. 1999)).

One of the mother's arguments on appeal is that the circuit court lacked jurisdiction to modify the child's custody because the juvenile court retained exclusive and continuing jurisdiction over the child. We first observe that "the question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus." Ex parte Flint Constr. Co., 775 So. 2d 805, 808 (Ala. 2000). In addition, "[a] judgment issued by a trial court without jurisdiction is a nullity." Ex parte Punturo, 928 So. 2d 1030, 1034 (Ala. 2002). Dismissal of the entirety of the mother's appeal to await the entry of a final judgment before addressing the mother's subject-matter-jurisdiction argument could result in a waste of judicial resources and could potentially invite the circuit court to enter a void judgment. Therefore, because an immediate decision on the mother's argument relating to the circuit court's subject-matter jurisdiction over the .00 action will best "assure the just, speedy, and inexpensive determination" of the matter, Rule 1, Ala. R. App. P., we

9

exercise our discretion to treat the mother's appeal, insofar as it raises the issue of the circuit court's subject-matter jurisdiction, as a petition for the writ of mandamus.

> "'""'A writ of mandamus is an extraordinary remedy that requires a showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'""'

> "Ex parte Punturo, 928 So. 2d 1030, 1033 (Ala. 2002) (quoting Ex parte Bruner, 749 So. 2d 437, 439 (Ala. 1999), quoting in turn Ex parte McNaughton, 728 So. 2d 592, 594 (Ala. 1998))."

Ex parte Siderius, 144 So. 3d 319, 323 (Ala. 2013).

In her challenge to the subject-matter jurisdiction of the circuit court, the mother contends that the circuit court lacked subject-matter jurisdiction to entertain the .00 action, in which the father sought custody of the child, because the juvenile court retained continuing jurisdiction over the child by virtue of its previous exercise of dependency jurisdiction over the child. Indeed, Ala. Code 1975, § 12-15-117(a), provides that,

> "[o]nce a child has been adjudicated dependent, … jurisdiction of the juvenile court shall terminate when the child becomes 21 years of age unless, prior thereto, the judge of the juvenile court terminates its jurisdiction by explicitly stating in a written order that it is terminating jurisdiction over the case involving the child."

10

In order to decide the issue presented by the mother, however, we need not determine whether the juvenile court terminated its continuing jurisdiction over the child. This is so because the circuit court had jurisdiction to make a custody determination regarding the child based on the circuit court's inherent general power to make a child-custody determination. Ala. Const. 2022, Art. VI, § 142(b). As we stated in Hornbuckle v. Hornbuckle, 223 So. 3d 225, 230 (Ala. Civ. App. 2016), "a circuit court's equity power provides the circuit court with inherent authority to make determinations regarding custody when a child is before the circuit court." See also Ala. Code 1975, § 12-11-31 (giving circuit courts equity jurisdiction). We further noted in Hornbuckle that a juvenile court's exclusive original jurisdiction over dependency matters, see Ala. Code 1975, § 12-15-114, does not deprive a circuit court of concurrent subject-matter jurisdiction over child-custody matters that it could otherwise validly exercise under Alabama law. 223 So. 3d at 231. Thus, even if the juvenile court has not terminated its continuing jurisdiction over the child, the circuit court still had jurisdiction over the .00 action because the juvenile court's continuing jurisdiction is not "exclusive" and the circuit court has the general power under Alabama

11

law to make child-custody determinations. See J.N.T. v. T.T.S., 396 So. 3d 394 (Ala. Civ. App. 2024).

J.N.T. also involved a custody dispute between an unmarried couple. In that case, the State of Alabama filed a petition in the Lee Juvenile Court on behalf of J.N.T., the mother in that case, seeking to establish the paternity of J.N.T.'s minor child and an award of child support. On July 7, 2022, the Lee Juvenile Court entered a judgment adjudicating T.T.S. as the minor child's father and ordering him to make child-support payments. The Lee Juvenile Court's judgment further provided that the judgment was a "final order" and directed the case to be marked as disposed.

Approximately one month before the Lee Juvenile Court entered its judgment, J.N.T. had filed a petition in the Lee Circuit Court seeking sole custody of the minor child. That petition was treated as a new domestic-relations action. On February 28, 2024, the Lee Circuit Court entered a judgment in the custody action awarding the parties joint custody of the child. On March 30, 2023, the mother appealed the custody judgment, arguing that the Lee Juvenile Court retained jurisdiction over the child. We held that, although the Lee Juvenile Court retained jurisdiction over

the child, it did not do so to the exclusion of the Lee Circuit Court's exercise of its concurrent jurisdiction over child-custody matters. J.N.T., 396 So. 3d at 399.

In this case, the circuit court, as a court "with [the] inherent authority to make determinations regarding custody when a child is before the circuit court," Hornbuckle, 223 So. 3d at 230, had jurisdiction over the .00 action. The juvenile court's continuing jurisdiction did not exclude the circuit court from exercising that jurisdiction. J.N.T, 396 So. 3d at 399. See also In re Nelson, 528 So. 2d 870 (Ala. Civ. App. 1988). Accordingly, we reject the mother's argument that the circuit court lacked subject-matter jurisdiction over the .00 action.

Having exercised our discretion to treat this aspect of the mother's appeal as a petition for the writ of mandamus, we deny the mother's petition. The circuit court had subject-matter jurisdiction over the father's custody petition. As we previously explained, the mother's other arguments, which relate to the substance of the February 2025 order or to the circuit court's consideration of certain evidence, are not properly reviewed via a petition for the writ of mandamus, and we dismiss the mother's appeal insofar as it presents those arguments.

13

APPEAL DISMISSED IN PART; PETITION DENIED.

Hanson and Fridy, JJ., concur.

Moore, P.J., and Bowden, J., concur in the result, without opinions.