Hobson L. Brown, Williams Oil Co., Inc., and Federated Insurance Company (hereinafter collectively referred to as plaintiffs) appeal from the trial court's order granting Whitaker Contracting Corporation's (Whitaker) summary judgment motion in Whitaker's favor.
The plaintiffs' claims against Blount County and the Blount County Commission remained pending. The trial court determined that there was no just reason for delay in the entry of a final judgment and directed the entry of a judgment in favor of Whitaker, pursuant to Rule 54(b), Ala.R.Civ.P. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
The plaintiffs contend that the trial court committed reversible error when it granted the summary judgment motion in Whitaker's favor because, they say, the evidence that was submitted created a genuine issue of a material fact. Specifically, the plaintiffs contend that they presented sufficient evidence to create a genuine issue of a material fact as to whether Whitaker's failure to adequately warn of the hazard created by the extremely low shoulder proximately caused the accident and resulting injuries and damages.
Rule 56(c), Ala.R.Civ.P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher,636 So.2d 682 (Ala.Civ.App. 1994).
Once the movant makes a prima facie showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact.Porter, 636 So.2d 682.
Our review of the record reveals the following pertinent facts: On May 1, 1992, Hobson L. Brown was driving a tractor and tanker owned by his employer, Williams Oil Company (Williams). Federated Insurance Company was Willlams's insurance carrier on that date.
Brown was travelling north on Blount County Road 25, transporting gasoline for delivery to a gas station just south of Warrenton on Blount County Road 25. About halfway through a slight curve to the right, the right front wheel of the rig dropped off the pavement.
Brown testified in his deposition that the wheel dropped off the pavement, the rig leaned to the right, and he attempted to get the rig back on the road. Brown indicated that when he tried to nudge the rig back onto the road, as he normally would, the rig leaned over even more because the shoulder was so low. Therefore, he pulled the wheel hard to bring the rig back onto the pavement. When the rig returned to the pavement, it began to fishtail and he was unable to straighten it out. The rig turned over off the right-hand side of the road and hit a tree. Gas leaked from the rig. The rig subsequently exploded when the wrecker service was attempting to set the tanker back on its wheels.
The portion of County Road 25 where the accident occurred was designated as Unit Two of a construction project and was repaved between November 9, 1991, and February 21, 1992. Whitaker contracted with Blount County to be responsible for the repaving, the restriping, and the placing of the signs in accordance with the Alabama Manual on Uniform Traffic Control Devices (MUTCD). It was the county's responsibility under the contract to build up the shoulders of the road after the construction project *Page 228 
was complete. The construction project was certified as complete in May 1993.
Whitaker was aware of the "low and unsafe shoulders" in the project area because David Reed, one of its employees, wrote a letter dated February 3, 1992, to Richard Spraggins, the Blount County engineer, which stated in pertinent part:
 "During a recent safety inspection of the above referenced projects, low and unsafe shoulders were observed. [Whitaker] understands that the Blount County Commission will build the shoulders to a safe standard. Please advise Whitaker when Blount County will address the correction of this problem and also please forward [to Whitaker] documentation which would excuse our firm of exposure might an accident occur due to the low shoulder conditions on these projects."
Brown stated that he had travelled the road where the accident occurred several times because it was a standard business route. Brown testified that he was aware that the surface of the road had been repaved in the several months preceding the accident, but that he did not expect the shoulder to be as low as it was.
Brown testified that although he remembers seeing a sign that said "Road Construction next 4.1 miles," located about three and one-half miles from the scene of the accident, he does not recall seeing any sign which warned of "low shoulder."
Charles Barrett, a vice-president at Whitaker, testified in his deposition that a sign indicating "Road Construction next __________ miles" and a sign warning of "low shoulder" were placed on County Road 25 in November 1991, at each end of the construction area, and that these signs were not removed prior to the May 1, 1992, accident. Barrett also testified that Whitaker placed the signs warning of "low shoulder" and that because Blount County did not request a sign warning of "low shoulder," he did not know if Blount County would have made a notation in the county's records of the sign warning of "low shoulder."
Spraggins testified in his deposition that during the construction, county employees conducted daily inspections of traffic control devices, including signs, and completed a report of these inspections during the construction period. Spraggins indicated that while the inspection reports indicated there was a sign indicating "Road Construction next __________ miles," the inspection reports did not note the existence of a sign warning of "low shoulder" during the construction period. Spraggins also indicated that the project diary would generally indicate if a "low shoulder" sign was placed at the construction site, but he did not know if there was such a notation in the project diary. Spraggins testified that he did not know if a "low shoulder" sign was in place on the date of the accident.
Dr. Stephen Richards, the plaintiffs' expert witness, testified that, in his opinion, a dangerous condition existed on County Road 25 at the time of the accident. Dr. Richards stated that the "dangerous condition" was a significant edge drop-off without proper warning devices and/or other protective treatments and that this condition had existed for an unreasonable length of time.
Dr. Richards stated that even assuming that there was a sign in place warning of the "low shoulder" where the sign indicating "Road Construction next 4.1 miles" was located, he would recommend that signs warning of the "low shoulder" be placed every mile to remind the motorists of the danger. Dr. Richards also testified that because Whitaker was obligated under its contract to follow the guidelines of the MUTCD, Whitaker would be obligated to leave the signs warning of the "low shoulder" in place as long as the dangerous condition existed.
We note that while Barrett testified that Whitaker placed signs warning of "low shoulder" and did not remove those signs prior to the May 1, 1992, accident, Brown does not recall seeing any sign warning of "low shoulder." Additionally, Spraggins admitted that the inspection reports completed by county employees did not note the existence of a sign warning of "low shoulder" and that he did not know if a "low shoulder" sign was in place on the date of the accident. Dr. Richards, the plaintiffs' expert, testified that, assuming a sign warning of "low shoulder" was in place at the beginning of the construction *Page 229 
area — three and one-half miles from the accident scene — he would recommend that a sign warning of "low shoulder" be placed every mile to remind the motorists of the danger.
In light of the above, we find that the plaintiffs presented sufficient evidence to create a genuine issue of a material fact as to whether Whitaker's failure to adequately warn of the hazard created by the extremely low shoulder proximately caused the accident and resulting injuries and damages. We note that there may well be other issues of fact.
Additionally, we would note that a summary judgment is rarely appropriate in negligence and personal injury cases.Cabaniss v. Wilson, 501 So.2d 1177 (Ala. 1986).
Consequently, we reverse the judgment of the trial court and remand this case to the trial court for proceedings consistent with this opinion.
As indicated earlier, this appeal is before this court pursuant to Rule 54(b), Ala.R.Civ.P.
This court requested that each party address the propriety of the trial court's granting a Rule 54(b) motion. Both parties concluded that the trial court's action was appropriate.
This court, in this instance, is not disposed to reverse the trial court's judgment in granting the Rule 54(b) motion. However, this court does take this opportunity to voice its concern pertaining to trial courts' possible "over use" of certifying judgments as final, pursuant to Rule 54(b).
Appellate review in a piecemeal fashion is not favored, and trial courts should certify a judgment as final, pursuant to Rule 54(b), only in a case where the failure to do so might have a harsh effect. 10 Charles A. Wright, Arthur R. Miller, 
Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2659, at 99. Consequently, a party who seeks immediate appellate review of a judgment which does not adjudicate all of the claims and/or all of the parties must make a showing as to why it is necessary that appellate review of that particular judgment be conducted prior to adjudication of the entire case. 10 C. Wright et al., Federal Practice and Procedure: Civil 2d § 2659, at 100.
In addition, the trial court, in its order, should list the factors which it considered in reaching its decision regarding whether to certify the judgment, pursuant to Rule 54(b), in order that the appellate court is better equipped to review the trial court's action. 10 C. Wright et al., Federal Practice andProcedure: Civil 2d § 2659, at 114.
Stated another way, in making the determination as to whether a judgment should be certified under Rule 54(b), the trial court should consider any factor that is relevant to that particular case and should list the factors considered in making its determination. The trial court should consider all factors, in addition to the fact that multiple parties and/or multiple claims were involved, that there has been a final decision as to one of the claims and/or the rights and responsibilities of one of the parties, and that there is "no just reason for delay." The trial court should indicate why it considers that there is "no just reason for delay." Hereafter, if a trial court should fail to list the factors considered, then the case will be returned so that the trial court can list those factors.
In light of the above, the judgment of the trial court is due to be reversed and remanded.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala. Code 1975, § 12-18-10(e).
REVERSED AND REMANDED.
All the judges concur. *Page 230