ROBERTSON, Presiding Judge.
Sara Cole appeals from a summary judgment entered by the Barbour County Circuit Court in favor of Farmers Exchange Bank (“the Bank”) on Cole’s fraud claim arising from the sale of a used residence. We reverse and remand.
Cole sued the Bank and Jeffrey Allen Miller, alleging that Miller and the Bank had failed to notify Cole that a residence that Miller had agreed to sell to Cole had been damaged by, and was infested with, termites. Cole further contended that she would not have purchased the house or become obligated to repay a home-acquisition loan from the Bank had she known of the damage or infestation. The Bank moved for the entry of a summary judgment in its favor, supported by transcripts of the depositions of Miller, Cole, and Gladys Gail Klonglan, the vice president and loan officer of the Bank at the time Cole purchased the residence. Miller also moved for a summary judgment. Cole filed a response in opposition, supported by excerpts from her transcribed deposition and those of Miller and Klonglan; she later filed a supplemental response, sup *18 ported by her affidavit.[1] The trial court later entered a summary judgment in favor of the Bank, denied Miller’s summary-judgment motion, and directed the entry of a final judgment in favor of the Bank pursuant to Rule 54(b), Ala.R.Civ.P.
Cole’s appeal from the summary judgment in favor of the Bank was transferred by the Alabama Supreme Court to this court, pursuant to § 12-2-7(6), Ala.Code 1975. Pursuant to the direction of this court, the trial court entered an order in compliance with Brown v. Whitaker Contracting Corp., 681 So.2d 226 (Ala.Civ.App.1996). Accordingly, we consider the merits of the appeal. See S.W.M. v. D.W.M., 723 So.2d 1271, 1272 (Ala.Civ.App.1998).
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. The burden placed on the moving party by this rule has often been discussed:
“ ‘The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).’”
Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989) (quoting Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala.1985)). In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala.1993). No presumption of correctness attaches to a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
We further note that Rule 56 is to be read in conjunction with the “substantial evidence rule” (§ 12-21-12, Ala. Code 1975). Hurst v. Alabama Power Co., 675 So.2d 397, 398 (Ala.1996). In order to defeat a defendant’s properly supported motion for summary judgment, the plaintiff must present “substantial evidence,” i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Id. (quoting West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
The record, viewed in a light most favorable to Cole, reveals the following-facts. On April 11, 1997, Miller and Cole entered into a sales agreement whereby Miller agreed to sell to Cole a used resi *19 dence in Clayton, Alabama. The sales agreement stated that the parties’ closing would take place on May 15,1997, and that Miller would be responsible for procuring a “termite inspection.” The parties’ signatures on the agreement were witnessed by Klonglan.
In compliance with his duties under the sales agreement, Miller employed Copter Pest Control (“Copter”) to provide a “termite bond” and to conduct an inspection of the residence he was to convey to Cole. At the time Miller contacted Copter, the residence had not been inspected for termites during the preceding 30 years. On May 8, 1997, Copter performed an inspection of the residence; on the next day, Copter prepared an “Official Alabama Wood Infestation Inspection Report” (see Ala. Admin. Code r. 80-10-9-.18 & Ex. A) that indicated that the residence was actively infested with subterranean termites. Attached to the inspection report was a graphic representation of the residence showing the portions thereof where active termite infestation had been found.
In her deposition, Klonglan testified that the inspection report was not received by the Bank before the closing. A copy of the inspection report contained in the record indicates that it had been signed by a representative of Copter, but a signature line provided for the “Purchaser or Legal Representative Acknowledging Receipt” had not been signed. The copy bears a stamp with the legend “received,” along with the handwritten date “6/6/97” and the cursive initials “GK.” Another “received” stamp also appearing on the copy of the report does not bear a date or a signature.
At his deposition, Miller testified as follows (emphasis added):
“Q. Did you contact [Copter] in person or by telephone?
“A. I don’t remember on the initial contact. I believe it was in person.
“Q. And did they tell you they would get [a termite] bond for you?
“A. Yes, sir.
“Q. Where is that bond?
“A. As far as I know, it is in the bank records. I delivered it at dosing date.
“Q. You gave them the termite bond?
“A. Yes, sir.
“Q. And on that occasion ... [d]id you obtain any information concerning termites in the house?
“A. Yes, sir.
“Q. Who called you?
“A. I got a — When I went to pay my bill at Copter.
“Q. Somebody told you?
“A. Yes, sir.
“Q. What did they tell you?
“A. They handed me an inspection report, shoived me lohere there was termites, told me what I had to do and handed me my paperwork and I wrote them a check.
“Q. Is this the same papenmrk you took to the bank?
“A. Yes, sir.
“Q. Did you keep a copy?
“A. No, sir.”
Cole testified at her deposition that she and several other persons had inspected the residence before the closing; however, no termites were discovered during these inspections. Cole also did not ask Miller about the presence of termites in the residence, but assumed that the house was termite-free.
The closing took place at the Bank on May 15, 1997; Cole, Miller, Miller’s wife, and Klonglan were present. At closing, Cole borrowed $71,120 from the Bank pursuant to an adjustable-rate mortgage loan to acquire the residence, and the Bank applied the majority of the sale proceeds *20 to satisfy Miller’s outstanding debts at the Bank. Cole testified at her deposition that she was handed a termite bond at closing, but that she was certain that she did not receive the inspection report prepared by Copter at closing. Cole affirmed that had she known of the existence of any termite infestation or damage, or had she been given the inspection report prepared by Copter before signing the closing papers, she would not have signed them.
Between one and two weeks after closing, while .a contractor was performing work for Cole on the bathroom floor of the residence, a number of termites were discovered. Cole telephoned the Bank, which informed her that the pest control service it routinely used was Copter. Cole then telephoned Copter, whose employee informed Cole that an inspection and treatment had been performed upon the residence several days before. A Copter employee then inspected the property once again, and informed Cole that it would require approximately $20,000 worth of work to keep the floor of the residence from collapsing.
Cole contends that the trial court erred in entering the summary judgment in favor of the Bank. We note that Cole’s claim against the Bank relates not to a misrepresentation of a material fact, but to the Bank’s allegedly fraudulent failure to reveal a material fact of which, Cole contends, it had knowledge and as to which it had a duty to speak. Thus, Cole has stated a claim of “fraudulent suppression,” which is occasionally referred to as a “fraudulent-concealment” claim because the element of concealment often provides the basis upon which a duty of disclosure is predicated. Our Supreme Court has identified the elements that a plaintiff must prove with respect to such a claim as follows:
“(1) that the defendant had a duty to disclose a material fact; (2) that the defendant concealed or failed to disclose the material fact; (3) that the defendant’s concealment or failure to disclose the material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result.”
Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 312 (Ala.1997).
In support of her contention that the trial court erred in entering the summary judgment in favor of the Bank on her fraudulent suppression claim, Cole relies principally upon Soniat v. Johnson-Rast & Hays, 626 So.2d 1256 (Ala.1993). In Soni-at, the purchasers of a used residence sued, among other persons, the seller of the residence, the seller’s real-estate agent, and the listing agency after having discovered termite damage to the residence following the closing of the purchase transaction. The facts of Soniat closely parallel those of this case, as evidenced by the following excerpts from the Supreme Court’s opinion:
“The Soniats contracted to purchase a used residence from Rice[, the seller]. [Peggy] Miller represented the property as the exclusive listing agent. Before the closing of the sale, the Soniats viewed the property, but did not ask Miller or Rice about termites or prior termite damage. The Soniats had an independent inspector look over the property before the closing, and he did not report any termite damage.
“Also, before the closing, Miller contacted American Termite & Pest Control Company (hereinafter “American Termite”), the company that had provided termite protection to the property since 1980. When Rice purchased the house in 1980, American Termite provided her, at the closing, with a graph that showed *21 termite damage to the house. Thereafter, when American Termite inspected the house, Rice acknowledged that the house contained ‘old termite damage.’
“Charles Sutton, the president of American Termite, testified that he had been contacted before the Soniat closing and asked to prepare a termite bond for the closing. Sutton testified that he put the following three items into an envelope: (1) a ‘termite letter’ stating that American Termite had observed no live termites when it last inspected the property; (2) the termite bond; and (3) a graph showing where the house had old termite damage. According to Sutton, the envelope was left in American Termite’s front office to be picked up. Sutton did not see who picked up the envelope.
“At closing, Rice handed the Soniats the termite letter and the termite bond; the graph was not attached, and the letter and the bond were not in the envelope from American Termite. Rice testified in her deposition that Miller had agreed to pick up the envelope from American Termite. Miller testified that she did not pick up the envelope and that she had no idea how the termite letter and the bond got to the closing.”
626 So.2d at 1258.
The defendant listing agency in So-niat, like the Bank in this ease, argued that it could not be liable to the Soniats because the Soniats had made no inquiry about termite damage, contending that under the doctrine of caveat emptor, as a general rule, neither a seller nor a seller’s real-estate agent has a duty to disclose facts concerning a used residence where information is not requested. See, e.g., Cornelius v. Austin, 542 So.2d 1220, 1223 (Ala.1989).[2] The Alabama Supreme Court rejected this contention, noting that under Alabama’s law of fraud, “a defendant who has no duty to disclose arising from his relationship with the plaintiff or the special circumstances of the transaction may nevertheless be liable for fraudulent concealment if he knowingly takes action to conceal a material fact with the intent to deceive or mislead the plaintiff.” 626 So.2d at 1259. The Soniat court further reasoned that the termite-damage graph was a “material fact,” and that a jury could infer (1) that the graph had been removed by one who knew of the'materiality of the graph to the transaction; and (2) that American Termite’s provision of the graph was necessarily known to whoever removed the graph from the envelope before closing, whether the removing party was the seller or the seller’s real-estate agent. 626 So.2d at 1259.
The Supreme Court also concluded that the evidence tending to show that the So-niats received only two of the three documents in the envelope picked up from American Termite would permit the inference that the graph was intentionally removed from the envelope, with the intent to deceive or mislead, by the seller, the seller’s real-estate agent, or both. 626 So.2d at 1260. Finally, the Soniat court rejected the proposition that the Soniats’ independent inspection of the property negated the element of inducement to act, noting that (1) a concealment need not be the sole inducement to an action for liability to attach; (2) the Soniats’ inspection did not reveal the old termite damage dis *22 closed in the graph; and (3) the Soniats stated that they would not have purchased the property had they seen the graph. Id. The Supreme Court therefore reversed the summary judgment as to the seller and the listing agency (which had employed the seller’s real-estate agent).
Here, as in Soniat, a pest control company prepared a termite bond and an inspection report disclosing termite damage to a used residence, and permitted those documents to be picked up before the closing of the sale of the residence it had inspected. While the Bank contends that Soniat is distinguishable because, according to Klonglan’s deposition testimony, the Bank did not receive Copter’s inspection report until after the closing, that testimony was not uncontradicted. Miller’s deposition testimony that he delivered both the inspection report and the termite bond to the Bank on the date of closing constitutes substantial evidence that the Bank did receive the inspection report on May 15, 1997. Cole testified at her deposition that she was certain that she did not receive a copy of the inspection report at the closing, and affirmed that if she had been given the inspection report before signing the closing paperwork, she never would have signed those papers.
Based upon these facts, a genuine issue of fact exists concerning whether the Bank fraudulently concealed the inspection report from Cole on the day of closing. Moreover, the Soniat court’s reversal of the summary judgment as to not only the seller, but also as to the listing agency, makes clear that no defendant can escape liability for active fraudulent concealment of a material fact merely by asserting the doctrine of caveat emptor, regardless of whether it was a party to the underlying sale transaction. Therefore, on the authority of Soniat, we reverse the summary judgment in favor of the Bank, and remand the cause for further proceedings.
REVERSED AND REMANDED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., dissents.

. While the Bank suggested, in its reply to Cole’s supplemental response to its summary-judgment motion, that the supplemental response was due to be stricken as untimely under the trial court’s scheduling order, ihe trial court did not act on the Bank’s suggestion. Because Rule 6(d), Ala.R.Civ.P., affords the trial court discretion to accept tardy affidavits in opposition to motions, and because the trial court entered a summary judgment in favor of the Bank without rejecting Cole's affidavit as untimely, we have considered the contents of that affidavit in determining whether Cole demonstrated the existence of a genuine issue of material fact. See Duckett v. Wilson Hotel Management, Inc., 669 So.2d 977, 980 (Ala.Civ.App.1995).

. We note that the doctrine of caveat emptor does not apply to defects in a used residence that are not readily observable by the purchaser and that affect health or safety. Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005 (Ala. 1988). Cole has not relied upon this exception, however, and we need not discuss its possible application to the facts of this case in reaching our decision.