*636 PARKER, Justice.
Bessie Kirksey appeals an order of the Jefferson Probate Court (“the probate court”) vacating its order discharging Kirksey as administrator ad litem of the estate of Kirksey’s sister, Willie Mae Graves, deceased. Iris Johnson, Darryl Thomas, Dorothy McLemore, John McLe-more, Jr., Jerrick McLemore, Frederick Pryor, Jr., Rafeal Santeee Powell, Nyya Nicole Marshall, Brandon LeMar Marshall, and Jeffrey Sams (alleged heirs of Graves hereinafter collectively referred to as “the omitted heirs”) filed a cross-appeal from the probate court’s order insofar as it denied the omitted'heirs’ motion to transfer the case to the Jefferson Circuit Court based on the alleged lack of subject-matter jurisdiction in the probate court. For the reasons stated herein, we treat the cross-appeal as a petition for a writ of mandamus, and we have styled the case accordingly. We dismiss the appeal,. and we grant the petition and issue the writ.

Facts and Procedural History

On June 3, 2011, Graves died intestate. On June 21, 2011, Kirksey filed a petition in the probate court requesting appointment as administrator ad litem for the purpose of bringing a wrongful-death claim. On June 30, 2011, Kirksey sent the probate court a letter via facsimile stating: “Below is the information you needed regarding the next of kin for Willie Mae Graves.” The letter then listed Kirksey’s name and address and the names and addresses of Margaret Thompson and Sonya Gardner, whom the letter identified as Graves’s sisters. Kirksey’s letter to the probate court also stated that, “[a]t the time of death, Willie Mae Graves had no spouse or children.” On July 11, 2011, the probate -court issued an order granting Kirksey’s petition and stating:
“Kirksey is appointed as administratrix ad litem in the matter of the estate of Willie Mae Graves, deceased, [to gather] information to investigate a wrongful death claim, with the express order that any settlement of the case must first be approved by [the probate court]. In addition, [Kirksey] must immediately deposit the recovery of any funds into the Jefferson County Probate Court Trust Fund for proper distribution.”
Subsequently, Kirksey filed a wrongful-death action in the Jefferson Circuit Court. On. March 21, 2012, Kirksey filed a motion in the probate court stating that a proposed confidential settlement had been reached with the defendant in the wrongful-death action. However, instead of asking the probate court to approve the proposed settlement of the wrongful-death action, as the probate court required in its July 11, 2011, order, Kirksey requested that she be relieved of that condition to her appointment as administrator ad li-tem. Kirksey also requested that the probate court not require her to deposit the funds with the probate court for distribution. In support of her motion, Kirksey attached a copy of Alabama’s wrongful-death statute, § 6-5-410, Ala.Code 1975, which states, in pertinent part: “The damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.”
On May 1, 2012, the probate court held a hearing on Kirksey’s motion. On May 4, 2012, the probate court issued an order stating, in pertinent part:
*637 “(2) The court approves the wrongful death settlement of $2,250,000 on behalf of the estate of Willie Mae Graves.
“(B) Pursuant to [the] Wrongful Death Act codified in [Ala.Code 1975,] § 6-5-410(c), the proceeds ‘are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.’
“(4) According to [Kirksey], the deceased leaves three lawful heirs:
“Sister. Bessie Kirksey (adult of sound mind)
“Sister. Margaret Thompson (adult of sound mind)
“Sister. Sonya Gardner (adult of sound mind)
“(5) The court orders [Kirksey’s attorney] to distribute the proceeds in accordance with [Ala.Code 1975,] § 43-8-42(3).
“(6) The court approves the distribution of these proceeds via the trust account of [Kirksey’s attorney]. Said proceeds are not to be paid into the [probate court].”[1]
Although the probate court did not require Kirksey to deposit the wrongful-death-settlement proceeds with the probate court, the probate court purported to approve the settlement of the wrongful-death action and the distribution of the wrongful-death-settlement proceeds to Kirksey, Thompson, and Gardner.
The record includes an affidavit of Kirk-sey, which lists Kirksey, Thompson, and Gardner as a “full and exhaustive list” of Graves’s siblings. The affidavit further states:
“6. I understand that a settlement was reached in the [wrongful-death action] in the Circuit Court of Jefferson County (Bessemer Division), Alabama. This case was brought pursuant to [Ala. Code 1975,] § 6-5-410, which is the Wrongful Death Statute of Alabama. According to the Wrongful Death Act, any damages recovered must be distributed according to the Statute of Distributions. Because my sister was not married at the time of her death and had no children, I understand that all of the proceeds from the wrongful death case pass to her heirs pursuant to [Ala. Code 1975,] § 43-8^2(1). Pursuant to this statute, all proceeds will pass to the heirs as long as they are of the same degree of kinship and then they take equally.
“7. Therefore, all siblings of Willie Mae Graves would share equally in the proceeds. I understand and agree that the list of heirs above is a complete and final list. I affirm that I do not have any knowledge of any other spouse, children, siblings or heirs of Willie Mae Graves. I further attest and affirm that all of the listed heirs are true and accurate heirs of Willie Mae Graves, pursuant to [Ala.Code 1975,] § 43-8-48. Therefore, by signing this declaration, I attest and affirm that I agree to this distribution, I agree with the accuracy of the list of heirs, I have no knowledge of any additional heirs, and I would waive any potential legal claim based on any *638 assertion that any of the listed heirs are not legal heirs entitled to a share of these wrongful death proceeds.”
On June 28, 2012, Kirksey, Thompson, and Gardner filed acknowledgments of the receipt of a distributive share of the wrongful-death-settlement proceeds. On the same day, the probate court issued a certificate of discharge stating that Kirk-sey “is hereby discharged and is released, in so far as her liability appears from her account, evidences and reports filed in this court.”
Sometime thereafter, the omitted heirs learned about the distribution .of the wrongful-death-settlement proceeds and filed in the probate court an “emergency petition to reopen estate, set aside discharge, appoint county administrator to handle estate and for other relief.” In their petition, the omitted heirs challenged Kirksey’s distribution of the wrongful-death-settlement proceeds. Specifically, the omitted heirs argued that they are heirs of Graves, known to Kirksey at the time of her appointment as administrator ad litem, and that, therefore, they are entitled to a share of the wrongful-death-settlement proceeds along with Kirksey, Thompson, and Gardner. The omitted heirs argued that the “estate need[ed] to be reopened to set aside the discharge that was entered,” pursuant to Rule 60(b), Ala. R. Civ. P., but they did not specify which subpart of Rule 60(b) applied to their petition. The omitted heirs’ petition asked the probate court to: 1) reopen the case, 2) set aside the certificate of discharge of Kirk-sey from her duties as administrator ad litem, 3) require Kirksey to make an accounting of the receipts and disbursements of the wrongful-death-settlement proceeds, 4) order Kirksey to refund all sums overpaid, whether to her or to others, 5) appoint the county administrator to represent Graves’s estate, 6) order Gardner and Thompson to immediately repay any overpayment, and 7) order other appropriate relief.
On February 4, 2013, Gardner filed an objection to the omitted heirs’ petition. Gardner argued that the petition was untimely and improper for failing to allege an applicable reason for relief under Rule 60(b), Ala. R. Civ. P. Gardner also argued that the petition should be denied because, she argued, the omitted heirs provided no evidence to substantiate their claim that the are heirs of Graves.
On February 5, 2013, the omitted heirs amended their petition and alleged that Kirksey had perpetrated a fraud on the probate court by swearing to the probate court that she, Thompson, and Gardner constituted Graves’s heirs and that she had, therefore, distributed the wrongful-death-settlement proceeds in accordance with the statute of distributions, when Kirksey had actually deprived the omitted heirs of their portion of the wrongful-death-settlement proceeds. Accordingly, the omitted heirs alleged that they were entitled to relief pursuant to § 43-8-5, Ala. Code 1975, which states:
“Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within one year after the discovery of the fraud or from the time when the fraud should have been discovered, but no proceeding may *639 be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate.”
On February 25, 2013, Keith T. Belt, Jr., and the Belt Law Firm, P.C. (hereinafter collectively referred to as “Belt”), who had formerly represented Kirksey in this matter,[2] filed a complaint interplead-ing a portion of the wrongful-death-settlement proceeds and seeking declaratory relief, naming Kirksey, Thompson, Gardner, and the omitted heirs as defendants.[3] Belt alleged that he learned of the omitted heirs on November 26, 2012, after the wrongful-death-settlement proceeds had been distributed to Kirksey, Thompson, and Gardner. Belt alleged that Kirksey, Thompson, and Gardner had received twice as much of the wrongful-death-settlement proceeds as they should have and that he had taken immediate steps to obtain repayment of the distributed funds upon learning of the existence of the omitted heirs. Belt alleged that Kirksey returned $233,903.17, half of the amount of the wrongful-death-settlement proceeds she had received, and that Gardner returned $10,000, which sums Belt held in trust; Belt did not state that Thompson returned any of the funds distributed to her. Belt deposited with the probate court the $243,903.17 of the wrongful-death-settlement proceeds he had • received from Kirksey and Gardner and requested that the probate court accept the interpleaded funds, enter a judgment declaring the rights and obligations as between and among the defendants; order that Belt be released and discharged from any and all liability, duty, or other obligation to Kirksey, Thompson, Gardner, and the omitted heirs; and award Belt attorney fees and costs associated with the complaint from the interpleaded funds. Kirksey, Thompson, Gardner, and the omitted heirs separately answered Belt’s interpleader complaint and objected to Belt’s requested relief on numerous grounds — including the probate court’s alleged lack of subject-matter jurisdiction over Belt’s complaint. Subsequently, Belt filed a motion for a discharge from the interpleader action. Belt’s motion has been held in abeyance pursuant to an agreement of the parties.
On February '28, 2013, Gardner filed an objection to the omitted heirs’ petition, arguing that § 43-8-5 was not applicable because, she argued, any false representation made to the probate court concerning the number and identity of Graves’s heirs was not the product of fraud on the probate court.
On April 12, 2013, Thompson filed a response to the omitted heirs’ petition and raised the same objections Gardner had raised in her responses to the omitted heirs’ original and amended petitions. On June 17, 2013, Thompson filed a motion to dismiss the omitted heirs’ petition under Rule 60(b), Ala. R. Civ. P., as being un *640 timely; she also alleged that § 43-8-5 was inapplicable because, Thompson said, there had been no fraud on the probate court.
'On June 17, 2013, Kirksey filed á response to the omitted heir’s petition and made the same arguments as those made, by Gardner and Thompson; she additionally argued that the probate court had “lost jurisdiction over the parties and subject matter.”
On June 18, 2013, the probate court conducted a hearing on the omitted heirs’ petition.
On July 8, 2013, the omitted heirs filed a complaint against Kirksey, Gardner, and Thompson in the Jefferson Circuit Court, asserting various claims related to Kirk-sey’s alleged improper distribution of the wrongful-death-settlement proceeds.[4]
On August 26, 2013, the probate court issued an order granting the omitted heirs’ motion to “reopen” Graves’s estate, setting aside its order discharging Kirksey as administrator ad litem, and appointing the county administrator to preside over future proceedings — which the probate court identified as a redistribution of the wrongful-death-settlement proceeds; the probate court also denied Kirksey’s motion to dismiss Belt’s interpleader complaint for lack of subject-matter jurisdiction.
On September 25, 2013, the omitted heirs filed a motion challenging the probate court’s subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds, requesting that the probate court vacate its August 26, 2013, order insofar as it “reopened” Graves’s estate and appointed the county administrator to preside over the proceedings, because letters of administration had never been issued to initially open Graves’s estate, and requesting that the probate court transfer the interpleaded funds to the Jefferson Circuit Court pending a determination in the action in that court that had been filed by the omitted heirs.
On September 26, 2013, Kirksey filed a motion asking the probate court to reconsider its August 26, 2013, order and to enter a new order finding that she had not committed a fraud on the probate court:
On November 1, 2013, Belt filed a response to the omitted heirs’ September 25, 2013, motion and argued that the probate court had jurisdiction over the interpleader action.
On November 25, 2013, the probate court entered the following order:
“This matter comes before the Court on two separate motions. On November 5, 2013, the Court heard oral argument on the motion of Defendant Bessie Kirk-sey, seeking to have the Court reconsider its Order of August 26, 2013, reopening the Estate of Willie Mae Graves, as well as the motion of the [omitted heirs] seeking to have the Court determine whether ... it has jurisdiction to continue to preside over this matter. A third Motion filed by Interpleader Plaintiffs Keith T. Belt, Jr. and the Belt Law Firm, P.C. seeking a discharge will be held in abeyance per the agreement of all counsel.
“The motions now before the court raise issues of whether the appointment of an Administrator ad Litem granted such AAL the authority to maintain and settle a wrongful death case citing the concurring opinion of Justice Bolin in Golden Gate Nat. Senior Care, LLC v. Roser, 94 So.3d 365 (Ala.2012). The cited opinion is admitted to be mere dicta *641 and this court is compelled to follow the law as stated in the controlling case of Affinity Hospital, LLC v. Williford, 21 So.3d 712 (Ala.2009).
“The motions raise the issue of this court’s jurisdiction to act in this case relying principally upon Ex parte Rodgers, [141 So.3d 1038 (Ala.2013),] and Justice Murdock’s special concurring opinion in Ex parte Taylor, 93 So.3d 118 (Ala.2012). Neither of these opinions is controlling in this case. The Rodgers case holds that an administrator, in his or her capacity as administrator, may not be compensated from wrongful death proceeds based upon the statutory formula for compensation of personal representatives because the proceeds from the wrongful death recovery are not assets of the estate. It was not a jurisdiction case and the appeal in that ease was from the Circuit Court for Jefferson County and raised no jurisdictional issue. In fact, Justice Bolin wrote' a specially concurring opinion suggesting that while the personal representative may not be compensated in his or her capacity as personal representative of the decedent’s estate, he or she may and should be compensated as a trustee.
“The movants next rely upon the special concurring opinion of Justice Mur-dock in Ex parte Taylor, supra, in which Justice Bolin concurred. The issue of probate jurisdiction was not before the court in that case and it should be emphasized that the rationale in the special concurring opinion, while well stated, is one side of the issue, and is not a holding of the Supreme Court nor does it necessarily state the opinion of a majority of the justices. In that opinion, after citing 12-13-1 [et seq., Ala.Code 1975,] Justice Murdock states,
“ ‘The foregoing categories of jurisdiction concern matters relating to the administration of a decedent’s estate; they do not authorize the probate court to entertain a motion concerning the approval of the settlement of a wrongful-death claim by a personal representative or to enter an order concerning the distribution of the proceeds from a settlement in such an action as part of the final settlement of the estate. Likewise, matters concerning the personal representative’s settlement of a wrongful-death claim and the distribution of the proceeds therefrom do not fall within the Mobile Probate Court’s general equity jurisdiction, which is limited to matters of equity “in the administration of the estates,” Act No. 91-131, Ala. Acts 1991, and to “any proceeding involving a testamentary or inter vivos trust.” Ala.Code 1975, § 19-3B-203.’
“However, the reference to Ala.Code 1975, § 19-3B-203 makes no reference to the interpretation of that code section construed by the full Court in Regions v. Reed, 60 So.3d 868 (Ala.2010), in an opinion also authored by Justice Mur-dock:
‘“Thus, the probate courts of Jefferson, Mobile, and Shelby Counties have concurrent jurisdiction with the circuit courts of those counties to hear any proceeding brought by a trustee or beneficiary concerning the administration of a trust. In other words, the reference in subsection (b) of § 19-3B-203 to probate courts that have been granted “statutory equitable jurisdiction” is an identifying reference, not a limitation on the jurisdiction of the courts so identified. It is those probate courts to which subsection (b) grants “concurrent jurisdiction” with the circuit courts to hear actions concerning the administration of a trust brought by a trustee or beneficiary.’
“60 So.3d at 880.
*642 “There is a limitation in 19-3B-203(b) to inter vivos and testamentary trusts. While the concurring opinion in Ex parte Taylor concludes that the trust or quasi trust formed for the' proceeds of a wrongful death recovery is neither, it may also be argued that the trust is an inter vivos trust.
“But the jurisdiction of this court in this case is not dependant upon the Uniform Trust Code. Ala.Code 1975, § 43-2-111 is a part of the probate code of this state. It is contained in Article 5 of Title 43 which is titled ‘Liability of Executors and Administrators’ and states, ‘The personal representative and the sureties on his bond are liable to the parties in interest for the due and legal distribution of all damages recovered by such representative under sections ... 6 — 5—410[, Ala.Code 1975, the wrongful-death act]... and are subject to all remedies which may be pursued against such representative and sureties for the due administration of personal assets.’ (Emphasis supplied). The sureties on the bond are bound to the probate court and no other court. The probate court has jurisdiction over the administrator and is the only party in interest who can call upon the surety for the payment of the penal sum of the bond. One of the remedies referred to in the code section which is available to the persons of interest who are wronged by the improper distribution of funds held by the administrator is to obtain an order from the probate court directing the proper administration of the funds and calling in the bond for failure to do so. It is clear that this court has original general jurisdiction to enforce this section of the code.
“With regard to the motion to reconsider, the Court holds that its previous finding of fraud on the Court is properly supported by the Court’s record. There is no question that the Court’s prior orders regarding the Estate of Willie Mae Graves relied upon information supplied by the Administrator ad Litem, Bessie Kirksey, in open court which has now been proven to be inaccurate. Regardless of her position that she did not intend to cause harm while making those statements, the statements were nonetheless relied upon by the Court thereby creating a fraud on the Court as a matter of law. This court has now heard the arguments of counsel on its motion to reconsider but has heard no evidence controverting the evidence taken in open court which induced this court to close the estate. The information then presented has been proven in open court to be untrue and this court has ruled that the order discharging the administrator ad litem is due to be and has been set aside and the estate has been reopened. There being no new or additional evidence presented to this court, the motion to reconsider is hereby denied.
“For the foregoing reasons, and the Court’s finding that it does have jurisdiction to continue to preside over the matters which are currently before the Court, the motion to construe jurisdiction is hereby denied. The Court finds that jurisdiction will be maintained in the Probate Court.
“There being no just cause for delay, this is determined to be a final order under [Rule 54(b), Ala. R. Civ. P.].”
Kirksey appealed; the omitted heirs cross-appealed, which cross-appeal we are treating as a petition for a writ of mandamus.

Discussion

Initially, we note:
“Not every order has the • requisite element of finality that can trigger the operation of Rule 54(b)[, Ala. R. Civ. P.]. Moss v. Williams, 747 So.2d 905 (Ala.Civ.App.1999). Therefore, a trial court *643 should certify a nonfinal order as final pursuant to Rule 54(b) only ‘where the failure to do so might have a harsh effect.’ Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala.Civ.App.1996) (overruled on other grounds, Schneider Nat’l Carriers, Inc. v. Tinney, 776 So.2d 753 (Ala.2000)). Rule 54(b) certifications are not to be entered routinely and should be made only in exceptional cases. Parrish v. Blazer Fin. Servs., Inc., 682 So.2d 1383 (Ala.Civ.App.1996). ‘ “Appellate review in a piecemeal fashion is not favored.” ’ Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala.Civ.App.1999) (quoting Brown v. Whitaker Contracting Corp., 681 So.2d at 229).”
Goldome Credit Corp. v. Player, 869 So.2d 1146, 1148 (Ala.Civ.App.2003).
“For an order to be susceptible to Rule 54(b) certification, the order must dispose of at least one of a number of claims or one of multiple parties, must make an express determination that there is no just reason for delay, and must expressly direct the entry of a judgment as to that claim or that party. Jakeman v. Lawrence Group Mgmt. Co., 82 So.3d 655, 659 (Ala.2011) (citing Committee Comments on 1973 Adoption of Rule 54(b), Ala. R. Civ. P.)....
“‘Pursuant to Rule 54(b), a trial court may direct “the entry of a final judgment as to one or more but fewer than all of the claims or parties.” But Rule 54(b) makes an order final — and therefore appealable — “only where the trial court ‘has completely disposed of one of a number of claims, or one of multiple parties.’ ” Tanner v. Alabama Power Co., 617 So.2d 656, 656 (Ala.1993) (quoting Committee Comments on the 1973 adoption of Rule 54(b)) (emphasis added in Tanner). In other words, for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party.’
“Haynes v. Alfa Fin. Corp., 730 So.2d 178, 181 (Ala.1999). ‘An appeal will not lie from a nonfinal judgment.’ Baugus v. City of Florence, 968 So.2d 529, 531 (Ala.2007).”
Ex parte Noland Hosp. Montgomery, LLC, 127 So.3d 1160, 1165-66 (Ala.2012).
The probate court’s November 25, 2013, order did not completely adjudicate a claim. Accordingly, the probate court’s order was not a final judgment, and the probate court’s Rule 54(b), Ala. R. Civ. P., certification of that nonfinal order was improper. “An appeal will not lie from a nonfinal judgment.” Baugus v. City of Florence, 968 So.2d 529, 531 (Ala.2007). We therefore dismiss Kirksey’s appeal (case no. 1130385).
Although an appeal will not lie from a nonfinal judgment, in certain instances a party can challenge a nonfinal order by a petition for a writ of mandamus. This Court has treated a notice of appeal as a petition for a writ of mandamus, Morrison Rests., Inc. v. Homestead Vill. of Fairhope, Ltd., 710 So.2d 905 (Ala.1998), and, conversely, treated a petition for a writ of mandamus as a notice of appeal, Ex parte Burch, 730 So.2d 143 (Ala.1999). As noted in F.L. Crane & Sons, Inc. v. Malouf Construction Corp., 953 So.2d 366 (Ala.2006), this Court’s actions in the above cases is consistent with Rule 1, Ala. RApp. P., which provides: “[These rules] shall be shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits.” Likewise, Rule -2(b), Ala. RApp. P., also calls for the suspension of the requirements or provisions of any of the Rules of Appellate Procedure “[i]n the interest of expediting decision.” In F.L. Crane & Sons, this *644 Court explained the reasoning for using the flexibility afforded by Rules 1 and 2 in the situations presented in that case and in Morrison Restaurants, Ex parte Burch, and the present case:
“In Ex parte Burch, we treated a petition for the writ of mandamus addressed to a trial court’s denial of a motion in limine as a notice of appeal. We stated in Burch that there is ‘no bright-line test for determining when this Court will treat a particular filing as a mandamus petition and when it will treat it as a notice of appeal.’ 730 So.2d at 146. Instead, we consider the facts of the particular case in deciding whether to treat the filing as a petition or as an appeal:
“ ‘The question we come to, then is this: Do the circumstances of this case make it such that the policies set forth in Rule 1[, Ala. R.App. P.,] will be served by resolving the matter presented to us? Or, will those policies be better served by requiring, as we do in the normal case, strict compliance with our appellate rules and thus not reviewing the trial court’s interlocutory ruling?’
“730 So.2d at 147.
“In Burch, we treated the petition as a petition for a permissive appeal under Rule 5, Ala. R.App. P., because the hearing transcript revealed the trial court’s belief that this Court’s resolution of the motion in limine was ‘important to materially advancing th[e] litigation.’ 730 So.2d at 147-48. Similarly, we believe that deciding the issue of the enforceability of this forum-selection clause on its merits will further the ‘just, speedy, and inexpensive determination ... on [the] merits’ of the case favored by Rule 1, Ala. R.App. P.”
953 So.2d at 372.
As in Ex parte Burch, consideration of the subject-matter jurisdiction of the probate court — an issue raised by the omitted heirs in their cross-appeal — is important to materially advancing this litigation. Therefore, although we are dismissing Kirksey’s appeal, we treat the omitted heirs’ cross-appeal as a petition for a writ of mandamus requesting this Court to direct the probate court to dismiss this case on the basis that that court lacks subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds.
We review the omitted heirs’ petition according to the following standard of review:
“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000).”
Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003).
In its November 25, 2013, order, the probate court concluded that “it does have jurisdiction to continue to preside over the matters which are ... before” it. The matters that were before the probate court when it entered that order were Kirksey’s motion to reconsider the probate court’s August 26, 2013, order — which “reopened” Graves’s estate, set aside its order discharging Kirksey as administrator ad litem, appointed the county administrator to preside over future proceedings, and denied Kirksey’s motion to dismiss Belt’s interpleader complaint for lack of subject-matter jurisdiction — as well as the omitted heirs’ September 25, 2013, motion — which *645 challenged the probate court’s subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds. The nucleus of each of those matters is the same: the alleged improper distribution of the wrongful-death-settlement proceeds. As explained below, the probate court’s conclusion that the settlement of the wrongful-death action was on behalf of the estate of the decedent led it to believe that it had jurisdiction over the distribution of the wrongful-death-settlement proceeds.[5]
A wrongful-death action is not brought by the estate of the decedent; accordingly, the proceeds from a wrongful-death action are not part of the decedent’s estate. As Justice Murdock noted in his special concurrence to Ex parte Taylor, 93 So.3d 118, 118 (Ala.2012) (Murdock, J., concurring specially):
“[A]n estate cannot file a wrongful-death action. See Ala.Code 1975, § 6-5-410; Downtown Nursing Home, Inc. v. Pool, 375 So.2d 465, 466 (Ala.1979) (noting that the ‘right’ to file a wrongful-death action is ‘vested in the personal representative alone’).1 As a corollary, the proceeds from the settlement of the wrongful-death claim that arose out of Newman’s death are not a part of Newman's estate. See, e.g., Steele v. Steele, 623 So.2d 1140, 1141 (Ala.1993) (‘[D]am-ages awarded pursuant to [§ 6-5-410] ... are not part of the decedent’s estate.’).
“This Court has long recognized that,
“ ‘[i]n prosecuting [wrongful-death] actions, the personal representative does not act strictly in his capacity as administrator of the estate of his decedent, because he is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent. He acts rather as an agent of legislative appointment for the effectuation of the legislative policy....’
“Hatas v. Partin, 278 Ala. 65, 68, 175 So.2d 759, 761 (1965); see also Steele, 623 So.2d at 1141 (noting that the ‘personal representative ... act[s] as agent by legislative appointment for the effec-tuation of a legislative policy of the prevention of homicides through the deterrent value of the infliction of punitive damages’). ‘Upon a recovery, [the personal representative] acts as a quasi trustee for those who are entitled thereto under the statute of distribution. Such damages are not subject to administration and do not become part of the deceased’s estate.’ United States Fid. & Guar. Co. v. Birmingham Oxygen Serv., Inc., 290 Ala. 149, 155, 274 So.2d 615, 621 (1973). Indeed, commenting on an earlier version of Alabama’s wrongful-death statute, this Court noted that the legislature has
“ ‘imposé[d] upon the administrator a trust separate and distinct from the administration. The trust is not for the benefit of the estate, but of the widow, children, or next of kin of the deceased. The administrator fills this *646 trust, but he does not do it in the capacity of representative of the estate. It is altogether distinct from the administration, notwithstanding it is filled by the administrator.’
“Hicks v. Barrett, 40 Ala. 291, 293 (1866) (discussing Ala.Code of 1852, § 1938).
[[Image here]]
“ 1Because we do not have the record on appeal before us, however, I cannot confirm whether the wrongful-death action was filed by Jerry, as personal representative of Newman’s estate, or by the estate itself, as the Court of Civil Appeals states in its opinion. Concomitantly, in reference to the Court of Civil Appeals’ description of litigation-settlement-restriction language contained in Jerry’s letters of administration, the probate court has no power to issue such a restriction as to the settlement of litigation in which the estate has no interest, i.e., a wrongful-death action.... ”
93 So.3d at 119.
With these principles in mind, we now address whether the probate court had the authority to oversee the distribution of the wrongful-death-settlement proceeds received by Kirksey and to condition her discharge as administrator ad litem on the probate court’s approval of Kirksey’s distribution of the wrongful-death-settlement proceeds — funds that were never part of Graves’s estate and in which the probate court has no interest; we hold that it did not.
The legislature established the subject-matter jurisdiction of the probate courts in § 12-13-1, Ala.Code 1975, which states:
“(a) The probate court shall have original and general jurisdiction as to all matters mentioned in this section and shall have original and general jurisdiction as to all other matters which may be conferred upon them by statute, unless the statute so conferring jurisdiction expressly makes the jurisdiction special or limited.
“(b) The probate court shall have original and general jurisdiction over the following matters:
“(1) The probate of wills.
“(2) The granting of letters testamentary and of administration and the repeal or revocation of the same.
“(3) All controversies in relation to the right of executorship or of administration.
■ “(4) The settlement of accounts of executors and administrators.
“(5) The sale and disposition of the real and personal property belonging to and the distribution of intestate’s estates.
“(6) The appointment and removal of guardians for minors and persons of unsound mind.
“(7) All controversies as to the right of guardianship and the settlement of guardians’ accounts.
“(8) The allotment of dower in land in the cases provided by law. .
“(9) The partition of lands within their counties.
“(10) The change of the name of any person residing in their county, upon his filing a declaration in writing, signed by him, stating the name by which he is known and the name to which he wishes it to be changed.
“(11) Such other cases as jurisdiction is or may be given to such courts by law in all cases to be exercised in the manner prescribed by law.
“(c) All orders, judgments and decrees of probate courts shall be accorded the same validity and presumptions which are accorded to judgments and orders of other courts of general jurisdiction.”
*647 Additionally, the Jefferson Probate Court “has concurrent jurisdiction with the circuit court in any proceeding involving a testamentary or inter vivos trust.” § 19-3B-203, Ala.Code 1975. See Jett v. Carter, 758 So.2d 526, 529 (Ala.1999) (“Act No. 1144, Ala. Acts 1971 (Reg.Session), a local act, applies to cases originating in the Jefferson Probate Court. It grants to the Jefferson Probate Court ‘general jurisdiction concurrent with that of the Circuit Courts of this State, in equity, in the administration of the estates of deceased persons, minors and insane or non compos mentis persons, including testamentary trust estates.’ (§ 1.)” (emphasis added)).
As Justice Murdock noted in his special concurrence in Ex parte Taylor in relation to the subject-matter jurisdiction of the Mobile Probate Court in a similar situation:
“The foregoing categories of jurisdiction[, §§ 12-13-l(b)(3)-(5), Ala.Code 1975,] concern matters relating to the administration of a decedent’s estate; they do not authorize the probate court to entertain a motion concerning the approval of the settlement of a wrongful-death claim by a personal representative or to enter an order concerning the distribution of the proceeds from a settlement in such an action as part of the final settlement of the estate. Likewise, matters concerning the personal representative’s settlement of a wrongful-death claim and the distribution of the proceeds therefrom do not fall within the Mobile Probate Court’s general equity jurisdiction, which is limited to matters of equity ‘in the administration of the estates,’ Act No. 91-131, Ala. Acts 1991, and to ‘any proceeding involving a testamentary or inter aúvos trust.’ Ala. Code 1975, § 19-3B-203.”
93 So.3d at 122.
However, in the present case, the probate court did not hold that it had subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds pursuant to the legislature’s general grant of jurisdiction under § 12-13-1. Rather, as set forth above, the probate court stated the following in regard to whether it had subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds:
“There is a limitation in 19-3B-203(b) to inter vivos and testamentary trusts. While the concurring opinion in Ex parte Taylor concludes that the trust or quasi trust formed for the proceeds of a wrongful death recovery is neither, it may also be argued that the trust is an inter vivos trust.”
Although the probate court did not address the question whether it had subject-matter jurisdiction under § 19-3B-203, Ala.Code 1975, a trust formed by the receipt of the proceeds in a wrongful-death action cannot be construed as an inter vivos trust, which is a “[t]rust created during lifetime of settlor and to become effective in his lifetime as contrasted with a testamentary trust which takes effect at death of settlor or testator.” Black’s Law Dictionary 821 (6th ed.1990).
Regardless, the probate court further stated that it had subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds pursuant to § 43-2-111, Ala.Code 1975, which provides:
“The personal representative and the sureties on his bond are liable to the parties in interest for the due and legal distribution of all damages recovered by such representative under sections ... 6-5-410 ... and are subject to all remedies which may be pursued against such representative and sureties for the due administration of personal assets.”
Section 43-2-111 authorizes an action against a personal representative regard *648 ing the distribution of proceeds of a wrongful-death action; it does not vest the probate court with subject-matter jurisdiction to oversee the distribution of the proceeds of a wrongful-death action, in which the estate of the decedent has no interest. Accordingly, the .probate court did not have subject-matter jurisdiction under § 12-13-1, § 43-2-111, or § 19-3B-203 over the settlement of the wrongful-death action and Kirksey’s distribution of the wrongful-death-settlement proceeds, Rather, subject-matter jurisdiction lies with the circuit court.
Therefore, the probate court does not have subject-matter jurisdiction over the interpleader action because the interplead-ed funds are not part of Graves’s estate but are the proceeds of the settlement of the wrongful-death action. Accordingly, Belt’s interpleader action is due to be dismissed.
Further, although a probate court has subject-matter jurisdiction over a petition to vacate its discharge of an administrator ad litem, in this case we note that the only basis for doing so was to attempt to correct Kirksey’s alleged improper distribution of the wrongful-death-settlement proceeds. Likewise, the probate court’s appointment of the county administrator and its “reopening” of Graves’s estate— when no letters of administration have been issued — were also based on its attempt to oversee the distribution of the wrongful-death-settlement proceeds, which the probate court has no authority to do. Accordingly, the probate court acted beyond its authority in taking those actions. Therefore, the omitted heirs have a clear legal right to the relief they seek — dismissal of the case for lack of subject-matter jurisdiction.

Conclusion

For the reasons explained above, the probate court did not have subject-matter jurisdiction to oversee either the settlement of the wrongful-death action or Kirk-sey’s distribution of the wrongful-death-settlement proceeds pursuant to the statute of distributions. Accordingly, the actions of the probate court regarding the settlement of the wrongful-death action and Kirksey’s distribution of the proceeds of the wrongful-death action are void. Therefore, we grant the omitted heirs’ petition for a writ of mandamus and direct the probate court to vacate its August 26, 2013, and November 25, 2013, orders and to dismiss Belt’s interpleader action. Furthermore, we direct the probate court to vacate its May 4, 2012, order insofar as it purported to approve the wrongful-death settlement and order the distribution of the funds to Kirksey, Thompson, and Gardner.
1130385 — APPEAL DISMISSED.
BOLIN, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
MOORE, C.J., and STUART, J., concur in the result.
1130403 — PETITION GRANTED; WRIT ISSUED.
MAIN, WISE, and BRYAN, JJ., concur.
BOLIN, MURDOCK, and SHAW, JJ., concur specially.
STUART, J., concurs in the result.
MOORE, C.J., dissents.

. We note that, in its May 4, 2012, order, the probate court stated that the settlement of the wrongful-death action was "on behalf of the estate of Willie Mae Graves.” However, as discussed more thoroughly below, a wrongful-death action is not brought by, or on behalf of, the estate of a decedent. Instead, Kirksey was appointed to bring the wrongful-death action on behalf of those entitled to receive any damages from such an action under the statute of distributions. See Ex parte Taylor, 93 So.3d 118, 119 (Ala.2012) (Murdock, J., concurring specially).

. Belt represented Kirksey through her discharge as administrator ad litem. On February 14, 2013, Kirksey retained current counsel.

. Belt alleged that Graves’s brother John McLemore, Sr., had a son named Jeremy, last name unknown, whom Belt named as a defendant. However, the omitted heirs denied that John McLemore, Sr., had a son named Jeremy.

. We note that by filing their action, the omitted heirs essentially sought the same relief in the Jefferson Circuit Court they are seeking in the probate court. Mainly, the omitted heirs have sought to hold Kirksey liable for her alleged improper distribution of the wrongful-death-settlement proceeds.

. We note that the question of Kirksey's capacity, as administrator ad litem, to bring the wrongful-death action is not before this Court. In Affinity Hospital, LLC v. Williford, 21 So.3d 712, 718 (Ala.2009), this Court held that, in maintaining a wrongful-death action, a plaintiff was "acting in her capacity as an administrator ad litem, was a 'personal representative' within the meaning of Ala.Code 1975, § 6-5-410, and was, therefore, vested with the authority conferred by that section to file a wrongful-death action.” Accordingly, we limit our analysis to the narrow issue involving the subject-matter jurisdiction of the probate court to oversee the distribution of the wrongful-death-settlement proceeds received by Kirksey as the personal representative of the decedent.